### 68792. FELKER v. THE STATE.
#### (323 SE2d 817)

BANKE, Presiding Judge.

The appellant, a licensed physician, was convicted of possessing cocaine in violation of the Controlled Substances Act. On appeal, he contends both that licensed physicians are authorized as a matter of law to possess cocaine and that the cocaine which he was accused of possessing should have been excluded due to the alleged illegality of the search which resulted in its seizure.

Detective Jordan of the Dalton Police Department testified that the appellant had been under investigation since 1980 due to his contact with suspected drug smugglers at the Dalton airport. This contact resulted from the appellant's operation of an aviation business at the airport known as General Aviation. Asked by the state's attorney to provide "specifics of the information that you've heard about Dr. Felker in regards to this airport and drug smuggling," Jordan replied, "I have seven pages of information leading to Dr. Felker in relation to other proven known drug smugglers." The only specifics Jordan actually offered, however, were that a maintenance man formerly in the appellant's employ had been arrested and indicted by the federal government on drug charges and that certain aircraft known to have been involved in smuggling had landed at Dalton airport and had proceeded to General Aviation while the appellant was present there. Jordan ultimately denied specific knowledge of any direct involvement by the appellant in drug smuggling activities.

With regard to the events leading to the appellant's arrest, Jordan testified that on the night of January 10, 1984, he received a telephone call from a confidential informant to the effect that "the subject we had been looking for for some time was presently at the airport and him and the stuff we were looking for was there, that we needed to get out there quick." Jordan stated that he had known this informant for about 3-½ years and that during that time the informant had provided him with information which he (Jordan) had been able to verify. Based on the tip, Jordan and three other law enforcement officers proceeded immediately to the airport, where they observed two cars, a Datsun 280 ZX and a Volkswagen Rabbit, parked in front of the General Aviation building. The Datsun 280 ZX was recognized as having the same appearance as one belonging to the appellant. Jordan then phoned his informant to obtain "a little bit more information," and was informed specifically that the appellant "was there at General Aviation and was in possession of cocaine." In the

meantime, the two automobiles under surveillance in front of the General Aviation office left the vicinity of the airport.

The appellant's car was followed and was observed shortly thereafter parked in front of his medical office, which was the scene of a gathering of several persons. The appellant was subsequently detained as he was attempting to drive away from the office. A search of his person and vehicle resulted in the discovery of a nasal spray bottle containing cocaine, as well as a straw, a surgical knife, and a pocket knife containing cocaine residue. During the course of this search, the appellant stated that he was entitled to possess cocaine and that he had more cocaine in his office. Based on this admission, a warrant was obtained for the search of his medical office. This search resulted in the discovery of three bottles in the appellant's desk drawer labeled "Cocaine, Hydrochloride Merck." Two of these bottles contained cocaine. *Held*:

1. We reject the appellant's apparent contention that a licensed physician is authorized under all circumstances to possess controlled substances. It is unlawful, under the Controlled Substances Act, for "any person" to possess or have under his control any controlled substance, "[e]xcept as authorized by this article." OCGA § 16-13-30 (a). One such exception, created by OCGA § 16-13-35 (b), is applicable to persons registered by the State Board of Pharmacy to manufacture, distribute, dispense, or conduct research with controlled substances, "*to the extent authorized by their registration* and in conformity with this article." (Emphasis supplied.) Pursuant to OCGA § 16-13-35 (g) (2), "[p]ersons licensed as a physician, dentist, or veterinarian under the laws of the state to use, mix, prepare, dispense, prescribe and administer drugs in connection with medical treatment to the extent provided by the laws of this state" are deemed automatically to be registered by the state Board of Pharmacy to do so.

While physicians are certainly given some authority under OCGA § 16-13-35 (b) and (g) (2) to possess controlled substances, we do not interpret this authority to be limitless. Rather, we read the two subsections as authorizing physicians to possess controlled substances to the extent they do so *as physicians*, i.e., to the extent such possession is for some use connected with their medical practice. To interpret the statute otherwise would be to give physicians *carte blanche* not only to possess controlled substances for their own personal, non-medical use but also to distribute them to others for non-medical use. Such was clearly not the intention of the Legislature in enacting the statute.

Though criminal statutes are to be construed strictly against the State, they are also to be construed so as to give legislative intent precedence over the literal import of words and to avoid unreasonable or illogical results. See generally *Bunge v. State*, 149 Ga. App. 712,

716 (256 SE2d 23) (1979); *Mitchell v. State*, 239 Ga. 3 (235 SE2d 509) (1977). In this case, the jury could reasonably have concluded from the State's evidence showing manner of the appellant's possession of the cocaine (viz., its presence on the two knives and the straw and in the nasal spray bottle) that it was being used for purposes unconnected with his medical practice. Consequently, we hold that the conviction was authorized by the statute.

2. It follows from the foregoing that the trial court did not err in denying the appellant's motion to quash the indictment. The indictment was proper on its face in any event, and a motion to quash or dismiss an indictment may not be predicated on extrinsic defects. See generally *Walters v. State*, 90 Ga. App. 360, 365 (83 SE2d 48) (1954); *Walker v. State*, 73 Ga. App. 20 (1), 21 (35 SE2d 391) (1945).

3. The State contends that the appellant waived appellate review of the denial of his motion to suppress by failing to object to the introduction of a crime lab report identifying the seized substances as cocaine. This contention is without merit. In stating that he had no objection to the report, counsel for the appellant obviously did not intend to stipulate either to the legality of the search or to the admissibility of the drugs themselves but merely to the admissibility of the crime lab tests identifying the drugs. It is to the State's advantage to encourage such stipulations, so as to minimize needless expenditure of judicial resources on proof of collateral elements as to which the parties have no bona fide dispute. This objective is not well served by unreasonable attempts to convert such cooperation into a weapon on appeal.

The appellant's failure to object to the admission of the contraband itself during the course of the trial likewise did not constitute a waiver of the motion to suppress. See *Kilgore v. State*, 247 Ga. 70 (274 SE2d 332) (1981).

4. The motion to suppress was meritorious and should have been granted. Whether the search is sought to be justified as incident to the appellant's arrest for possession of cocaine or whether it is sought to be justified by exigent circumstances, it cannot be upheld unless probable cause existed for a belief that the appellant was currently in unlawful possession of cocaine. Under the standard set forth by the United States Supreme Court in Illinois v. Gates, ___ U. S. ___ (103 SC 2317, 76 LE2d 527) (1983), probable cause may be predicated on an informant's tip only if, under the "totality of the circumstances," including the "veracity" and "basis of knowledge" of the informant, there is a "fair probability" that contraband or evidence of a crime will be found in a particular place. Id. at 4716. This test replaces the more stringent two-pronged test enunciated in Aguilar v. Texas, 378 U. S. 108 (84 SC 1509, 12 LE2d 723) (1964) and Spinelli v. United States, 393 U. S. 410 (89 SC 584, 21 LE2d 637) (1969), requiring an

informant's tip to be supported by underlying circumstances showing both the informant's reliability and the source of his information. However, the two tests are certainly not mutually exclusive (cf. *State v. Stephens*, 252 Ga. 181 (311 SE2d 823) (1984)), and many of the cases decided under the Aguilar-Spinelli rule consequently remain helpful in assessing whether an informant's tip is sufficient to establish probable cause for a search.

Considering the totality of the circumstances in this case, we find that the information disclosed by Detective Jordan and the other witnesses for the State was totally insufficient to establish reasonable cause for a belief on their part that the appellant was currently in possession of cocaine. In the first place, there was no disclosure of the source of the informant's information. Compare, e.g., *Parker v. State*, 161 Ga. App. 37 (288 SE2d 852) (1982) (where the informant had observed the contraband personally). Given the lack of any independent corroboration of the tip, this must be regarded as an extremely significant omission. We reject the argument that such corroboration was provided by the mere observation of the appellant's car in front of the General Aviation building, for in view of the appellant's ownership of General Aviation, this fact was totally consistent with his innocence. Accord *Rohrig v. State*, 148 Ga. App. 869 (253 SE2d 253) (1979); *Radowick v. State*, 145 Ga. App. 231, 235 (244 SE2d 346) (1978). Compare *Koza v. State*, 158 Ga. App. 709 (2) (282 SE2d 131) (1981).

In addition to the lack of any showing of the source of the informant's information, there was also no showing of his or her reliability. It is, of course, well established that such reliability is not established by the mere, unsupported assertion that the informant has provided reliable information in the past. See *Kouder v. State*, 154 Ga. App. 597 (269 SE2d 92) (1980); *Galgano v. State*, 147 Ga. App. 284 (248 SE2d 548) (1978); *Burns v. State*, 119 Ga. App. 678, 683 (168 SE2d 786) (1969). There being neither any showing of the informant's knowledgeability, nor any showing of his or her veracity, nor any corroboration of the information provided by the informant, we can find no reasonable basis for a belief on the part of the arresting officers that the appellant was in possession of contraband at the time of his arrest. It follows that the State failed to meet its burden of establishing probable cause for the arrest and that the motion to suppress should have been granted.

*Judgment reversed. Pope and Benham, JJ., concur.*

DECIDED SEPTEMBER 10, 1984 —
REHEARING DENIED OCTOBER 31, 1984

*E. Crawford McDonald*, for appellant.
*Stephen A. Williams, District Attorney, Steven M. Harrison*,

*Assistant District Attorney,* for appellee.
*Richard H. Vincent, Robert N. Berg,* amici curiae.