75290, 75291. KELLEHER et al. v. THE STATE.
(365 SE2d 889)

BANKE, Presiding Judge.

The appellants, Michael John Kelleher, Sr., and Michael John Kelleher, Jr., were jointly tried and convicted on charges of possessing cocaine, possessing marijuana (more than an ounce), and manufacturing marijuana, all in violation of the Georgia Controlled Substances Act. Kelleher, Jr., was additionally convicted of six counts of using a communication facility to commit or facilitate the commission of an act constituting a felony under the Controlled Substances Act. See OCGA § 16-13-32.3.

The contraband upon which the three joint drug convictions were based was seized from the Kellehers' residence during the course of two searches conducted pursuant to separate search warrants. The original search warrant was predicated on information obtained through electronic surveillance of the Kellehers' telephone lines. This surveillance had been conducted pursuant to an "investigation warrant" (see OCGA § 16-11-64) previously issued by the same superior court judge who issued the search warrant, based on information that Kelleher, Sr., his wife, and various other named individuals were participants in an ongoing racketeering enterprise involving the importation and distribution of illicit drugs. The surveillance warrant had au-

thorized the monitoring of telephone lines both at the Kellehers' residence and at a separate business office which they maintained under the name Seaboard Development, Inc., ostensibly for the purpose of buying and selling cars and boats.

The application for the original search warrant was accompanied by the affidavit of GBI Agent Fran Wiley purporting to establish probable cause for a belief that marijuana and cocaine were currently being concealed at the Kellehers' residence. The averments contained in this affidavit, virtually all of which were based on information derived from the electronic surveillance of the Kellehers' telephone lines, may be summarized as follows: (1) The Kellehers were believed to be "associated with known drug traffickers"; (2) Michael Kelleher [Sr.] was "very cautious when talking over his personal telephone . . . to known drug traffickers," often concealing both the identity of his callers and the content of his telephone conversations by discontinuing conversations on his residence phone and resuming them on pay telephones located in the vicinity; (3) Mr. Kelleher was in possession of a telephone "beeper" which was "listed to" another individual; (4) he employed "various codes" when utilizing this beeper; (5) he "utilize[d] various different vehicles in the further concealment of his activities," often interchanging license plates among them, including Georgia dealer plates; (6) no calls had been monitored at the offices of Seaboard Development, Inc., suggesting that no business activity was actually carried out there; (7) Mr. Kelleher was in the process of negotiating for the purchase of real estate valued in excess of $200,000 and had previously been involved in negotiations for the purchase of boats and motor vehicles valued in excess of $20,000, yet he had no apparent source of income with which to make such purchases; (8) he had discussed "large quantities of money" with certain individuals and had "been observed by officers in possession of large quantities of money"; (9) he had conducted numerous telephone conversations with an individual in Florida believed to be Eddie Lederman, who was on probation in that state "for a felony drug charge (marijuana)" and with whom Kelleher had, two years previously, been involved in an "attempted drug smuggling venture" involving a 1978 "Sportcoach" motor home registered to Seaboard Development, Inc.; (10) Kelleher had discussed with Lederman plans to transport both the motor home and a boat from Florida to Georgia; (11) on the same day that the warrant was sought, Lederman had been observed, apparently while en route from Florida to Georgia with the motor home and boat, meeting with the mother of another drug-trafficking suspect near an interstate highway exit in Florida; and (12) the woman in question had been driving a vehicle bearing a license tag registered to Seaboard Development, Inc., which had been sent to her by Mrs. Kelleher two days previously via Federal Express. Agent Wiley further

averred in her affidavit that Mr. Kelleher's son, Michael Kelleher, Jr., had talked "freely" during monitored telephone conversations about "smoking and buying marijuana as well as cocaine" and that he "appear[ed] unrestricted as to these drug activities at home." Finally, the affiant expressed the belief, based on her past drug enforcement experience, that "[i]t is common for persons to use the controlled substances . . . which they are trafficking in."

The initial warrant for the search of the Kellehers' residence was issued at approximately 10:20 p.m. on the night of March 16, 1985. By its terms, it authorized the seizure of no items other than "marijuana and cocaine." However, during the ensuing execution of the warrant, which commenced at approximately 11:00 p.m. that night and continued for several hours, numerous personal items and financial records were also seized from the residence. The actual contraband discovered and seized consisted of a plastic bag containing approximately five ounces of marijuana, two sifters containing trace amounts of cocaine, and several other items of suspected drug paraphernalia, such as rolling papers, "roach clips," and a set of scales. Mr. and Mrs. Kelleher and their son were jointly charged with possession of marijuana and cocaine on the basis of these seizures.

On March 17, 1985, a GBI agent, still acting pursuant to the electronic surveillance warrant, monitored a telephone call made by Michael Kelleher, Jr., to his residence from the Hall County Jail. This call was answered by an individual named Sherri Rank, to whom Kelleher gave the following instructions: "[G]o out in the greenhouse and clean it out, they probably already found everything, but . . . there's some garbage in the greenhouse . . . if it's there, just throw it away." In response to the interception of this phone conversation, several law enforcement officers immediately went out to the Kelleher residence and looked inside the greenhouse, where they observed several trays containing marijuana seedlings.

Later that day, a second warrant was issued for the search of the Kelleher residence, based, ostensibly, on the information contained in the affidavit for the previous warrant, combined with the observations made during the course of the execution of that warrant. The second warrant authorized the seizure of any and all evidence of potential criminal violations, including financial records, address and telephone books, travel documents and various other items, the bulk of which had quite evidently already been seized. In addition, it authorized the seizure of any controlled substances or drug paraphernalia which might still be on the premises. The execution of this warrant resulted in the seizure of 38 marijuana seedlings from the greenhouse along with numerous tomato plants. It was the former evidence which served as the basis for the charge of manufacturing marijuana.

Following lengthy pre-trial proceedings presided over by several

different judges, the charges against the Kellehers were ultimately tried before the court without a jury. The two appellants herein were found guilty of all the charges against them. They appeal separately from the denial of their motion for new trial. *Held*:

1. The appellants enumerate as error the denial of their motion to suppress the contraband seized from their home, contending that the information on which the original search warrant was based did not establish probable cause for a belief that marijuana or cocaine would be discovered there. It is not argued by the state that the judge who issued this warrant was supplied with any information other than that which was contained in GBI agent Wiley's affidavit. Thus, "the facts recited in the affidavit are determinative of the question." *Lewis v. State*, 126 Ga. App. 123, 127 (190 SE2d 123) (1972).

In reviewing an application for a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Illinois v. Gates*, 462 U. S. 213, 238-239 (103 SC 2317, 76 LE2d 527, 548) (1983).

Even assuming, for purposes of this appeal, that the information set forth in agent Wiley's affidavit established probable cause for a belief that the appellants were involved in drug trafficking, we must agree with their contention that it did not establish to a "fair probability" that marijuana or cocaine was currently being stored at their residence. Certainly, there was nothing in the affidavit to suggest that the house was being utilized as a base of operations for the actual distribution of drugs, as was the case in *State v. Stephens*, 252 Ga. 181 (311 SE2d 823) (1984). Rather, the only information contained in the affidavit which suggested in any way the actual, current presence of marijuana or cocaine on the premises was the averment that Michael Kelleher, Jr., had been overheard on the telephone "talking about smoking and buying marijuana as well as cocaine." However, in view of the extensive amount of surveillance which had taken place and the noticeable absence of any averment that the younger Kelleher had been overheard making any statement connecting his involvement with these drugs to his parents' home, we consider this statement too slender a reed to support the issuance of a warrant for the search of the residence.

"Probable cause means less than a certainty but more than mere suspicion or possibility. [Cit.] Mere speculation, rumor, or opinion is not enough; there must be reasonable grounds after inquiry. . . . The officer must place before the magistrate sufficient facts to enable the

latter to make his own determination and not merely adopt the conclusions of the police officer." *Yocham v. State*, 165 Ga. App. 650, 652 (302 SE2d 390) (1983).

Having concluded that the information contained in Agent Wiley's affidavit was insufficient in and of itself to establish to a fair probability that marijuana and/or cocaine were currently being stored at the Kelleher residence, we are constrained to hold that the court erred in refusing to suppress the fruits of the original search. Since the affidavit for the issuance of the second search warrant was predicated solely on observations made during the initial search, it follows from our determination that the original search was unlawful that the marijuana plants seized during the course of the second search should also have been suppressed.

2. Appellant Kelleher, Jr., contends that the evidence was insufficient to support any one of his six convictions of using a communications facility to commit, cause, or facilitate a violation of the Controlled Substances Act. See generally OCGA § 16-13-32.3. The state disagrees and additionally contends that these convictions were not, in any event, required to be supported by evidence because they were based on "negotiated verdicts of guilty."

(a) The concept that a verdict of guilty can be negotiated by a criminal defendant is a novel one to this court, and one which could bear considerable explanation. Regretfully, however, the state has not chosen to enlighten us as to the process by which such negotiations might occur. Rather, the only clarification the state has provided to us in this connection consists of a reference to the written sentences entered on these six convictions. An examination of these documents reveals that each contains the printed statement, "PLEA/VERDICT OF GUILTY/NOLO CONTENDERE NEGOTIATED/NON-NEGOTIATED," on which the printed words "PLEA," "NOLO CONTENDERE," and "NON-NEGOTIATED" have been stricken through, so as to make the statement read: VERDICT OF GUILTY NEGOTIATED." Suffice it to say that the manner in which these sentencing documents were completed in no way suggests that the appellant conceded his guilt of any of the offenses in question, nor does it otherwise suggest that the appellant waived his right to appellate review of the sufficiency of the evidence introduced in support of these convictions.

(b) Each of the communications facility indictments charged that, on a certain specified date, Michael Kelleher, Jr., did knowingly and intentionally engage in a telephone conversation with a certain named individual, or with certain named individuals, "in order to commit, cause and facilitate" a conspiracy to possess, sell, or distribute marijuana or LSD or both in violation of the Controlled Substances Act. The evidence offered in support of each indictment con-

sisted, in essence, of a transcript of a monitored telephone conversation between the appellant and the other individual or individuals named in the indictment. During each of these conversations, the subject of procuring drugs was discussed through the use of slang terminology. However, in no instance did the state introduce any evidence tending to suggest that any overt act was ever carried out in furtherance of the drug transaction which had been discussed.

For example, the transcript upon which the state relied to prove the offense alleged in indictment No. 85CR61S, reveals merely that the appellant asked the other party to the telephone conversation, "Hey, can you get a half?"; to which the other party responded, "Maybe, I'll just have to check." Even assuming that the parties were discussing marijuana, as was alleged in this indictment, this conversation establishes at most the existence of a conspiratorial agreement or understanding. In order to establish the offense of criminal conspiracy, there must also be evidence that one or more of the participants engaged in an "overt act to effect the object of the conspiracy." OCGA § 16-4-8. See generally *Hammock v. Zant*, 244 Ga. 863 (262 SE2d 82) (1979).

Because we cannot accept the state's contention that each of the telephonic discussions in question was sufficient, in and of itself, to establish both the existence of a conspiratorial agreement and the commission of an overt act in furtherance of the object of the conspiracy, and because we have been cited by the state to no evidence from which it could be inferred that any such overt acts were otherwise carried out, we hold that the evidence was insufficient as a matter of law to support a conviction on any one of these indictments.

3. The appellants' remaining enumerations of error are rendered moot by the foregoing.

*Judgments reversed. Benham, J., concurs. Carley, J., concurs in judgment only.*

DECIDED FEBRUARY 10, 1988.

*Billy L. Spruell, Bobby Lee Cook, Norman Johnson, James F. Wyatt III*, for appellants.

*C. Andrew Fuller, District Attorney, Michael J. Bowers, Attorney General, George P. Shingler, Assistant Attorney General*, for appellee.