A91A1677. POLKE v. THE STATE.
(417 SE2d 22)

Carley, Presiding Judge.

Appellant was tried before a jury and found guilty of trafficking in cocaine and possession of marijuana with intent to distribute. He appeals from the judgments of conviction and sentences entered by the trial court on the jury's guilty verdicts.

1. Appellant enumerates as error the denial of his motion to suppress the cocaine.

The only evidence presented at the suppression hearing was the testimony of the arresting officer. Insofar as it is relevant to this appeal, that testimony was as follows: The officer responded to a telephone call from an anonymous tipster, who stated that drugs were then being sold in the Liberty Street area. Although the tipster indicated that "we know who it is," no name was given to the officer. This anonymous tipster had called the police department frequently and the information conveyed in his prior calls had on more than one occasion proved to be true. After driving several blocks on Liberty Street without seeing anyone, the officer made two turns and saw appellant approaching on foot. The officer had been told by other "reliable informants" that appellant was a drug dealer who carried the drugs with him. Earlier that very evening, a person whose past information had never been corroborated had told the officer that he had seen appellant with drugs at some unspecified time and that appellant would have drugs on him that night. When appellant saw the officer, he abruptly turned and crossed some railroad tracks. When the officer later pulled beside appellant, he turned again. Appellant was stopped and frisked and large sums of money found. Although no contraband was discovered at that time, appellant was arrested for a controlled substances violation. He was then taken to the police station, where he was searched and the cocaine was found on his person.

" 'Whether [a] search is sought to be justified as incident to [an] arrest for possession of cocaine or whether it is sought to be justified by exigent circumstances, it cannot be upheld unless probable cause existed for a belief that the [suspect] was currently in unlawful pos-

session of cocaine. . . .' [Cit.]" *Salter v. State*, 198 Ga. App. 242, 243 (1) (401 SE2d 541) (1990). In stopping and searching appellant, the officer acted solely on information supplied by informants. " 'The sufficiency of information obtained from an informant is not to be judged by any rigid test. Generally, probable cause is determined by the "totality of the circumstances" surrounding (1) the basis of the informant's knowledge and (2) the informant['s] veracity or reliability. [Cit.] "(A) deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." [Cit.]' [Cit.]" *Rucker v. State*, 199 Ga. App. 854, 855 (406 SE2d 277) (1991). The case which originally set forth this test, *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983), must "be considered as the *outer limit* of probable cause." (Emphasis in original.) *State v. Stephens*, 252 Ga. 181, 184 (311 SE2d 823) (1984).

"Reliable informants" had told the officer that appellant was a drug dealer, but there was no showing as to how those informants had come to that conclusion. Another informant had told the officer that appellant would have drugs on him that evening, but that informant had no prior history of reliability. Yet another informant had told the officer that drugs were then being sold in a specified area, but that informant did not name appellant as the perpetrator. "Considering the totality of the circumstances in this case, we find that the information disclosed [to the officer] was . . . insufficient to establish reasonable cause for a belief . . . that the appellant was currently in possession of cocaine. In the first place, there was no disclosure of the source of the informant[s'] information. [Cit.]" *Felker v. State*, 172 Ga. App. 492, 495 (4) (323 SE2d 817) (1984). "[I]t is questionable . . . whether the deficiency in the basis of the informant[s'] knowledge was adequately compensated by the informant[s'] previous record[s] of reliability." *Rucker v. State*, supra at 855. See *Galgano v. State*, 147 Ga. App. 284 (248 SE2d 548) (1978); *Collins v. State*, 188 Ga. App. 172 (372 SE2d 503) (1988). Indeed, the informant who had told the officer that appellant would have drugs on him that night had *no* prior history of reliability. "Even if the informant[s] [were] reliable, where no evidence is presented at the suppression hearing to show ' "that the police officer knew how the informant[s] received the information or else had such detailed information that he knew it to be more than mere rumor or suspicion,' " then the information was insufficient to establish probable cause for a search. [Cits.]" *Rucker v. State*, supra at 855. "There is no suggestion in this case that the informant[s] revealed . . . the source of [their] information, *nor* was the information . . . sufficiently detailed to suggest that it was based on anything more substantial than mere rumor. [Cit.]" (Emphasis supplied.) *Salter v. State*, supra at 243 (1). Indeed, the informant whose

call prompted the officer to ultimate action never even *named* appellant as one of the persons involved in the illegal drug activity on Liberty Street. Cf. *Kelleher v. State*, 185 Ga. App. 774, 777 (1) (365 SE2d 889) (1988).

This lack of detail or disclosure of the source of the informants' information is extremely significant, given the lack of independent corroboration of the tip. See *Felker v. State*, supra at 495 (4). Moreover, the lack of corroboration assumes greater significance where, as here, the informant who precipitated the officer's ultimate action was anonymous. See *Stola v. State*, 182 Ga. App. 502, 503 (1) (356 SE2d 222) (1987). Despite an immediate response by the officer to the tip regarding drug activity in the Liberty Street area, the only "corroboration" of the details thereof was the discovery of a lone, evasive person unnamed in the tip walking one block over from Liberty Street. This is no real corroboration at all. Accordingly, "[w]e cannot say here that 'any deficiency in the basis of the informant[s'] knowledge was . . . adequately compensated by the totality of the attendant circumstances.' [Cit.]" *Rucker v. State*, supra at 856. "While the tip, combined with [the discovery of appellant and prior information relating to him may have given] rise to an articulable suspicion of criminal wrongdoing sufficient to support an investigatory detention, [cit.], we do not believe the facts known to the officers after completing their [frisk] of the appellant[, including the discovery of large sums of cash on his person,] . . . were sufficient under the circumstances to establish probable cause for the appellant's arrest for unlawful possession of drugs. Accordingly, we are constrained to hold that the ['search incident' to appellant's arrest] was not authorized and that the trial court erred in denying the appellant's motion to suppress. [Cits.]" *Salter v. State*, supra at 243-244 (1). Compare *Illinois v. Gates*, supra; *State v. Stephens*, supra.

The dissent ignores fundamental principles of Fourth Amendment jurisprudence.

There were several informants, but, even construing their reports, together, there was no *reliable* information that appellant was *then* in *current* possession of drugs so as to authorize an *immediate warrantless* arrest for that crime. Under the "totality of the circumstances," the most that can be said is that the officers were in possession of mere rumors, circulating in the underworld, that appellant was in violation of the drug laws. Mere rumors of criminal activity, from sources not otherwise shown to be reliable, will *not* authorize an immediate warrantless arrest. *Salter v. State*, supra at 243 (1). Compare *Jones v. State*, 195 Ga. App. 868, 869 (1) (395 SE2d 69) (1990) (wherein the specific and detailed tip was provided by a concerned citizen).

There was *no* independent corroboration of the rumors. The officers merely discovered appellant walking *alone* some distance from

Liberty Street. This does *not* corroborate that drugs were being *sold* in the Liberty Street area because "sale" requires a seller *and* a buyer. Compare *State v. Billoups*, 191 Ga. App. 834 (383 SE2d 198) (1989) (wherein the officers personally observed a probable on-going drug deal between *two* individuals); *State v. Grimes*, 195 Ga. App. 773, 774 (1) (395 SE2d 42) (1990) (wherein the officer observed suspicious activity, not the *mere presence* of an individual). Corroboration of an individual's mere presence at a designated public location is *not* corroboration of otherwise unreliable rumors of criminal activity so as to authorize an immediate warrantless arrest. *Johnson v. State*, 197 Ga. App. 538 (398 SE2d 826) (1990).

Appellants flight *did* give the officers an articulable suspicion to *stop* and *frisk* him. However, the frisk did *not* result in the discovery of drugs. The frisk resulted only in the discovery of large sums of money. Possession of large sums of money certainly may be suspicious, but it is *not* itself a crime and does *not* constitute probable cause for an immediate warrantless arrest for possession of contraband. *Brown v. State*, 191 Ga. App. 779 (383 SE2d 170) (1989).

The subsequent *post-arrest* search of appellant did produce drugs. However, the existence of probable cause cannot be determined on the basis of hindsight. Under the dissent's analysis, any law-abiding citizen who is the target of anonymous rumors from otherwise unreliable sources would be subject to an immediate warrantless arrest if he is merely found walking down a public street with a large sum of money in his possession. To protect law-abiding citizens from being subjected to such harassment, the Fourth Amendment serves to limit an officer's authority to effectuate an arrest and the exclusionary rule mandates the grant of appellant's motion to suppress. *Salter v. State*, supra at 243 (1).

2. Appellant enumerates the general grounds. In light of our holding in Division 1, appellant's conviction for trafficking in cocaine must be reversed because the cocaine was inadmissible.

3. As to the other count, appellant contends that the State failed to prove that he lived in the house where the marijuana was found pursuant to a search warrant or that he had the requisite intent to distribute.

Over a two-month period, officers had undertaken a surveillance of the house in question. The only person seen entering or leaving the premises was appellant, who would enter without knocking and sometimes stay all night. Appellant's vehicles were regularly parked there, and the water bill for the house was in his name. Appellant made no showing that anyone else had been to the house during the two-month surveillance. "The police surveillance of the [house], in addition to the other evidence adduced, amply supported, if not demanded, a finding by the jury that appellant resided in [the house in

question]." *Barkley v. State*, 198 Ga. App. 477, 478 (402 SE2d 88) (1991).

The search of the house revealed a total of 2.2 ounces of marijuana rolled up in 47 plastic bags and a red tool box containing almost $8,000 cash in various large and small denominations. "Circumstantial evidence that the total quantity of marijuana possessed by [appellant] was packaged in numerous small [plastic bags, and that a large amount of cash was also found,] is sufficient for a rational trier of fact to find [appellant] guilty of possession with intent to distribute. [Cits.] We find the circumstantial evidence in this case sufficient to meet the standard of proof required by *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)." *Henderson v. State*, 184 Ga. App. 834, 836 (2) (363 SE2d 52) (1987). See also *Wiley v. State*, 178 Ga. App. 136 (1) (342 SE2d 342) (1986); *Hunter v. State*, 190 Ga. App. 52, 54 (2) (378 SE2d 338) (1989).

4. The admission into evidence of a photograph of appellant is enumerated as error.

The photograph was found during the search of the house, lying in plain view on a coffee table in the living room. Thus, it was relevant to show that the house was appellant's residence. "Photographs which are relevant to any issue in the case are admissible even though they may have an effect upon the jury. [Cit.]" *Barfield v. State*, 170 Ga. App. 796, 797 (2) (318 SE2d 219) (1984). See also *Ramey v. State*, 250 Ga. 455, 456 (1) (298 SE2d 503) (1983).

5. Appellant enumerates as error the instruction given the jury regarding the photograph, urging that it amounted to an impermissible comment on the evidence and the weight to be attached thereto.

" ' "Where, in charging the jury, the court correctly states the law governing the case, but exception is taken to an illustration used by the court explanatory of a legal principle, this court will not narrowly scrutinize the illustration if satisfied that, whether right or wrong, it was not calculated to mislead, and did not in fact mislead the jury." ' [Cit.]" *Ridgeway v. State*, 174 Ga. App. 663, 667 (7) (330 SE2d 916) (1985). Here, the trial court correctly stated the law regarding the admission of the photograph and, although an explanatory illustration of the legal principle was employed, the trial court subsequently told the jury that it did not mean to give too strong an illustration, but that it was merely trying to help them understand the principle. Accordingly, there was no error.

6. The trial court's failure to sustain an objection to an officer's testimony regarding conclusions which were or could be drawn from the photograph is enumerated as error. "However, this enumeration is not supported by argument *or* citation of authority and so is deemed abandoned pursuant to Court of Appeals Rule 15 (c) (2). [Cit.]" (Emphasis supplied.) *Saunders v. State*, 195 Ga. App. 810, 811 (2) (395

SE2d 53) (1990).

7. The failure of the trial court to instruct the jury to disregard certain "improper and hearsay" testimony is enumerated as error. However, the record shows that appellant's objection was sustained *prior to* any actual hearsay testimony being given. On appeal, appellant urges that certain *other* testimony was inadmissible as constituting an opinion on an ultimate issue. However, the record shows that no objection was raised at the time this testimony was given.

8. The trial court's giving of a charge on the subject of searches and probable cause is enumerated as error.

Appellant objected below only on the ground that the charge is "not a correct statement of law, the whole thing taken as a whole." On appeal, appellant nevertheless contends that the instruction relates to an issue not within the province of the jury and is an impermissible comment on the evidence. As to the objection raised below, the charge appears to be an accurate statement of the law. The trial court informed the jury that the issues of lawfulness of any search and existence of probable cause are *not* issues for the jury. The objections on appeal may be valid, but those objections were waived when appellant did not raise them below "and did not reserve the right to make further objections. [Cit.]" *Garrett v. State*, 184 Ga. App. 715, 716 (4) (362 SE2d 423) (1987).

9. Appellant's remaining enumeration of error relates to the jury charge. However, the objection raised on appeal was not raised below and appellant did not reserve the right to make further objections. Accordingly, the right to assert this enumeration of error was waived.

10. Appellant's conviction and sentence for possession of marijuana with intent to distribute are affirmed. His conviction and sentence for trafficking in cocaine are reversed.

*Judgment affirmed in part and reversed in part. Sognier, C. J., Pope and Cooper, JJ., and Judge Arnold Shulman concur. McMurray, P. J., Birdsong, P. J., Beasley and Andrews, JJ., concur in part and dissent in part.*

BEASLEY, Judge, concurring in part and dissenting in part.

I fully concur in Divisions 3 through 9 but not in Divisions 1, 2, and consequently 10, for in my opinion the search which yielded the cocaine met the requirements of the Fourth Amendment.

1. In determining the validity of a search which is deemed valid after a suppression hearing, the trial evidence is also considered. *O'Donnell v. State*, 200 Ga. App. 829, 830 (1) (409 SE2d 579) (1991). In addition, we are governed by the rule that "the trial court's decision on questions of fact and credibility at a suppression hearing must be accepted unless clearly erroneous. *Lego v. Twomey*, 404 U. S. 477 [(92 SC 619, 30 LE2d 618)] (1972); [Cits.]" *Woodruff v. State*, 233 Ga.

840, 844 (3) (213 SE2d 689) (1975).

Appellant complains not only that the court erred in denying the motion to suppress but also, for the same reason, in admitting such evidence at trial and denying the amended motion for new trial.

The composite of the evidence shows that " 'probable cause existed for a belief [by the police] that [Polke] was currently in unlawful possession of cocaine. . . .' [Cit.]" *Salter v. State*, 198 Ga. App. 242, 243 (1) (401 SE2d 541) (1990). This is sufficient to authorize a warrantless search when there are exigent circumstances, which here were created when the tips are taken in concert, and to them are added the police knowledge of the drug-proneness of the geographical area to which they were directed, together with the corroboration of the tips by Polke's presence where the information said he would be, plus his deliberate evasion of the police in that very locale and at that time, clearly indicating a desire to avoid even talking to them.

As repeated in *Salter*, supra: "Under the standard set forth by the United States Supreme Court in *Illinois v. Gates*, [462] U. S. [213] (103 SC 2317, 76 LE2d 527) (1983), probable cause may be predicated on an informant's tip only if, under the 'totality of the circumstances,' including the 'veracity' and 'basis of knowledge' of the informant, there is a 'fair probability' that contraband or evidence of a crime will be found in a particular place. Id. at 4716." *Felker v. State*, 172 Ga. App. 492, 494 (4) (323 SE2d 817) (1984).

There was not one informant here, but several, and their various pieces of information added up and all pointed in one direction, i.e., that Polke then had cocaine in his possession. The police were not directed to an unidentified individual. They knew they were looking for Polke, and the testifying officer knew him, having talked to him out on the street several times. Another officer also knew him and had arrested him previously, and a third officer who remained at the station had known him for two years. The chief of police had talked to him a number of times. His residence was even then under surveillance for drug activity, as it had been for two months.

According to the officer who testified at the motion hearing, the person who had provided them with reliable drug crime information in the past called, "saying that there was (sic) drugs being sold in the Liberty Street area and we (the police) know who it is." This was between 10:00 and 11:00 p.m. This officer, an investigator who had twelve years' police experience, immediately went with two others to the Liberty Street area looking for Polke. They had made numerous drug arrests in that area and had had "hundreds of complaints" about people "standing on the corner flagging people down selling drugs." These complaints came "at least every day several times a day."

The other person from whom the officer received information

earlier that evening had been arrested for cocaine but was no longer under arrest. He was being interviewed by the officer and told him that Polke had drugs on him that night, specifically two snuff boxes inside his shorts, and a lot of money in his boots. He had seen these stashes several times. These particular details were consistent with other information the police had received about Polke. This person had given information in the past which the officer believed was true, although he had not tried to corroborate it.

Polke was spotted in the vicinity of where it had been reported he would be. He was not in any of the vehicles he drove and he was not on his motorcycle; he was on foot. When he saw the police, he made an abrupt turn and deliberately changed his course, twice. Ordinarily when he would see the chief of police, he would run up and talk, but this time he moved away instead, raising the chief's suspicion that something was awry. During the first detour across the railroad track, through the weeds, he walked more hurriedly than he usually did. He flagged a car and talked with the occupants for a few minutes. When the police car approached, he started to run, but the officer jumped out and stopped him.

"Flight at the approach of law officers is a strong indicium of mens rea. [Cit.] Indeed, flight coupled with other circumstances has been held to establish probable cause for an immediate arrest. *Scott v. State*, 193 Ga. App. 74 (387 SE2d 31) (1989); *State v. Billoups*, 191 Ga. App. 834 (383 SE2d 198) (1989)." *State v. Grimes*, 195 Ga. App. 773, 774 (1) (395 SE2d 42) (1990). In *Billoups*, the court analyzed the circumstances and concluded "that in the context of the time of day and the location, the [suspect's] flight from the officer provided probable cause for a belief that he was in possession of unlawful contraband, with the result that the search was authorized as a search incident to a valid arrest." 191 Ga. App. at 835.

In Polke's case, the circumstances were much stronger and the police had a more knowledgeable underlying base. As in *Grimes*, so here: "However, even assuming that the other circumstances which were present in the instant case were not such as to establish probable cause for [Polke's] immediate arrest, his flight 'was nevertheless clearly a sufficiently suspicious . . . response to the (approach of law officers) so as to give (them) at least a reasonable suspicion of [Polke's] criminal activity and to warrant further investigation.' [Cit.]" 195 Ga. App. at 774.

When the officers finally stopped Polke and the testifying officer frisked him, he tried to stop the frisk by repeatedly pushing his hand away and loudly telling him to stop the frisk as the officer told him he wanted to talk to him about some drugs. His girl friend came running up and tried to interfere. The officer felt a large bulge in his front pocket and thought it could be a weapon. He put his hand in the

pocket and pulled out a large sum of money, which appeared to be the proceeds of drug sales because of its amount. Polke also had a plastic bag full of money in his cowboy boot. The total was over $9,000 in denominations of 10, 20, 50, and 100.

The frisk was justified under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). The officers had reasonable articulable grounds under the totality of the circumstances, not arising simply at the moment but including what led up to it, to suspect that defendant was armed and engaged in criminal activity; a frisk was necessary for the protection of the officers out on the street in a high crime area at night; the frisk was limited to a search for weapons in Polke's pocket and boot, both of which contained bulk which suspicioned the presence of a weapon. See *Jackson v. State*, 191 Ga. App. 439, 440 (1) (382 SE2d 177) (1989).

The protective measures taken by the officers were reasonable under the circumstances, which is the key question. *Edwards v. State*, 165 Ga. App. 527, 528 (301 SE2d 693) (1983). The fruit of the frisk, when considered under all the circumstances (*Illinois v. Gates*, supra), brought the officers to a point at which there was probable cause to arrest and subsequently search defendant without warrant rather than releasing him from the brief investigatory stop. The facts in this case surpassed the quality and quantity of those which authorized the search in *Jones v. State*, 195 Ga. App. 868, 869 (2) (395 SE2d 69) (1990), wherein these principles were applied.

Polke was arrested and transported to the jail, where a further search of his person, incident to the arrest, revealed the cocaine in two snuff boxes which were concealed between two pairs of underpants which Polke was wearing and for which cocaine (306 pieces in one box and 70 pieces in the other) he was convicted of the offense of trafficking. OCGA § 16-13-31 (a) (1).

Thus, the motion to suppress was authorized as there was no Fourth Amendment violation, and the law did not require the exclusion of the evidence. Nor was a new trial demanded by these grounds.

2. The evidence as to the cocaine charge was sufficient to meet the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

I am authorized to state that Presiding Judge McMurray, Presiding Judge Birdsong and Judge Andrews concur in this opinion.

DECIDED FEBRUARY 20, 1992 —
RECONSIDERATION DENIED MARCH 11, 1992.

*Stubbs & Associates, M. Francis Stubbs*, for appellant.
*Richard A. Malone, District Attorney, William S. Askew, Assis-*

*tant District Attorney*, for appellee.