A00A2117. CHRISTOPHER et al. v. THE STATE.
(539 SE2d 206)

ELDRIDGE, Judge.

John Henry Christopher and Faye Lambert Christopher were charged with the offenses of manufacturing marijuana (Count 1) and possession of marijuana with the intent to distribute (Count 2). Following a jury trial, the jury found John H. Christopher guilty of manufacturing marijuana and guilty of the lesser included offense of possession of marijuana. Faye L. Christopher was found not guilty of manufacturing marijuana and guilty of the lesser included offense of possession of marijuana. Defendants appeal from the judgment entered on the verdict. We find no error and affirm.

1. Defendants allege that the trial court erred in denying their motion to suppress because the search warrant affidavit contained insufficient facts and evidence to enable a neutral and detached magistrate to conclude there was sufficient probable cause to believe that marijuana would be located at defendants' residence.

> In determining [the sufficiency of an affidavit to support the] issuance of a [search] warrant, we employ the totality of the circumstances analysis enunciated in *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983), and adopted by the Georgia Supreme Court in *State v. Stephens*, 252 Ga. 181 (311 SE2d 823) (1984), with the admonition that prudence counsels that *Gates* be considered as the outer limit of probable cause. Under that analysis, the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information,

there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. [Cit.]

*Galvan v. State*, 240 Ga. App. 608 (524 SE2d 297) (1999).

In this case, a search warrant was issued for the defendants' house based on the affidavit of Officer Mark McClure, which was attached to the search warrant. The affidavit of McClure contains the following information: (1) the affiant had been employed by the Georgia Bureau of Investigation ("GBI") for approximately twelve years and had conducted numerous investigations concerning the production, sale, and distribution of marijuana; (2) defendant John H. Christopher was observed by law enforcement personnel leaving a business known as Atlantis Hydroponics in Athens with a lighting device commonly known by law enforcement personnel to be used in marijuana cultivation; (3) defendants' home had two electric meters connected to the residence, and the house appeared to be heated by propane gas; (4) the power bills for account number 03090007 in the name of John H. Christopher showed a lower kilowatt usage of electricity during the summer months (June through August 1997) than the fall and winter months (September 1997 through January 1998), and the average monthly kilowatt usage between June 1998 and January 1999 had increased by 354 percent when compared with the identical months in 1997 and 1998; (5) the power bills for account number 03090005 in the name of John J. Christopher showed that between January 1998 and February 1998 the bill more than doubled; (6) an exaggerated increase in power usage is consistent with the enterprise of growing marijuana indoors due to the enormous amounts of energy used by indoor lighting equipment; (7) certain equipment commonly used in the indoor manufacturing of marijuana (PVC piping, water hoses running to the basement, a 75-gallon rusty compressed air tank with a valve on top and what appeared to be insulated copper tubing wrapped partway in duct tape coming out of the top of the tank and going into a small hole in a boarded-up basement window, and a crude ventilation system coming out of the same basement window) was observed at the defendants' residence; (8) a forward-looking infrared ("FLIR") aerial surveillance at night (when the temperature was approximately 60°F) of defendants' home indicated an unusual heat source emanating from the basement line along the right side of the house and from a concrete retaining wall adjoining the left side of the basement, which was consistent with large amounts of energy being used by lighting equipment to cultivate the growth of marijuana (a comparison FLIR was conducted on

a neighboring residence of similar size which did not show any unexplained or unusual heat patterns); (9) defendants operated a landscaping business out of their home, but the business was unfamiliar to local law enforcement officers, Hoyt "Buddy" Henry who is the owner-manager of a local garden center, and the Department of Agriculture Plant Protection Division, which licenses businesses that grow and sell plants in Georgia; (10) the vehicles of two persons with a criminal history of marijuana use and distribution were observed at defendants' home on numerous occasions; and (11) a "Ryder" truck was observed parked in the driveway of the residence. McClure further averred that he interviewed Henry, who had nine years of experience working at Conrad's Garden Center and was a former law enforcement officer with twelve years experience in narcotics investigations. Henry advised McClure of the following: (1) it is not economically advantageous for a small company to raise bedding or vegetable plants using an indoor hydroponic system; (2) there is no professional or commercial use for a hydroponic system in a landscaping business; (3) although carbon dioxide is a plant growth stimulant, it is not economical for the commercial production of plants; (4) during his nine years in the nursery business, he had never seen a professional or commercial use for hydroponic equipment or carbon dioxide for a small plant production company; and (5) during his twelve years in law enforcement, the only use he had seen for hydroponic growth equipment and carbon dioxide was the indoor production and manufacture of marijuana.

We find no error in the issuance of a search warrant based upon this affidavit. Although defendants argue that none of the facts averred to in the affidavit demonstrated any illegal activity by the defendants,[1] the officer clearly averred that in his training and experience as a GBI agent such facts were indicative of the indoor production and manufacture of marijuana. Hence, the affidavit presented to the issuing magistrate provided a substantial basis for concluding that probable cause existed that contraband would be found in the place to be searched.

2. Defendants further allege that the trial court erred by denying

---

[1] Appellants' reliance on *Kelleher v. State*, 185 Ga. App. 774 (365 SE2d 889) (1988), is unfounded. This two-judge case is not binding precedent and is also distinguishable on the facts. In *Kelleher*, this court found that there was "nothing in the affidavit to suggest that the house was being utilized as a base of operations for the actual distribution of drugs." Id. at 777. However, in this case, the officer specifically averred to facts that he observed which in his training and experience indicated that marijuana was being grown within the house of defendants.

their motion for mistrial. Prior to opening statements, the trial court instructed the jury as follows:

> Trials are not like Perry Mason. The trial will be the following: First you will hear an opening statement from the [s]tate. An opening statement, my best analogy, is like the top of a jigsaw puzzle box. They're going to pour out a bunch of pieces during the trial of the case and those pieces will come to you from oral testimony and documents and other things. Now, I'm going to give you a hint. That 1,000 piece puzzle and all those pieces are not there. Nobody can recreate each and every aspect of something that happened in the past. In fact, if every aspect was here clearly developed, we probably wouldn't be here if each and every aspect were here.

Defendants argued at trial and on appeal that such statement by the trial court relieved the state of its burden of proving each and every essential element of the offense charged beyond a reasonable doubt. We disagree.

Viewing the court's preliminary instructions as a whole, it is a correct statement of the law and explains that the defendants' guilt may be proved by both direct and circumstantial evidence. Moreover, the charge given by the trial court at the end of the evidentiary phase of the case clearly informed the jury of the state's burden to prove every material allegation of the indictment and to prove every essential element of the crimes charged beyond a reasonable doubt and defined reasonable doubt. The trial court, also, properly charged the jury on direct and circumstantial evidence. Therefore, error, if any, in the trial court's preliminary instructions was corrected and was harmless. See *Cochran v. State*, 256 Ga. 113, 115 (8) (344 SE2d 402) (1986).

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED SEPTEMBER 12, 2000.

*Germano & Kimmey, C. David Turk III, Summer & Summer, Daniel A. Summer*, for appellants.

*N. Stanley Gunter, District Attorney, Gerald W. Bruce, Assistant District Attorney*, for appellee.