A97A0108. JORDAN v. THE STATE.
(484 SE2d 60)

Judge Harold R. Banke.

Tony B. Jordan was convicted of trafficking in cocaine. In his sole enumeration of error, he raises the general grounds, leaving us with only the sufficiency of the evidence to review. *Towns v. State*, 185 Ga. App. 545 (365 SE2d 137) (1988).

The evidence, viewed in the light most favorable to the verdict, reveals the following. *Sims v. State*, 266 Ga. 764, 765 (1) (470 SE2d 886) (1996). This case arose after law enforcement authorities executed a search warrant on an apartment Jordan leased. A confidential informant had directed authorities to the apartment with information of drug transactions. Authorities then drove by the apartment on several occasions and initiated surveillance for several hours at a time for two or three days before the search warrant was obtained. They also arranged for an undercover agent to purchase cocaine from an unidentified individual in the apartment.

When the authorities executed the search warrant Jordan was not present, although his car was parked in front of the building. However, officers arrested Jordan's nephew, Jonathan Green, standing beside a light or telephone pole in the yard. They also arrested three other men who were discovered in the apartment.

Inside the apartment's south bedroom, officers discovered what appeared to be cocaine residue on a high school yearbook, some scales, $541, single-edged razor blades, plastic bags, a pistol and Jordan's student photographic identification card from Albany State College. In the north bedroom, they found a measuring cup containing suspected residue which was not sent to the crime lab, a two ounce bottle of inositol powder, a B vitamin which may be used to cut cocaine, a rifle and a shotgun.

Approximately 20 feet outside the apartment building under the telephone pole Green was standing by authorities discovered a coffee

can containing approximately 94 grams of cocaine of nearly 100 percent purity. The pole was located in an unfenced section of the common area. Next to a bush near the building's corner they found two more small green bags containing cocaine. They unearthed six additional bags containing cocaine in the yard covered with a rush mat and pine straw. In all, over 108 grams of cocaine of 100 percent purity were seized. *Held*:

Where, as here, a conviction depends entirely on circumstantial evidence, such evidence must be so consistent with the hypothesis of guilt as to exclude every other reasonable hypothesis. OCGA § 24-4-6; *Morrison v. State*, 220 Ga. App. 151, 153 (1) (a) (469 SE2d 686) (1996). The evidence presented in this case does not meet this standard.

The bulk of the cocaine, the amount required to satisfy the trafficking statute, was found outside the apartment in an unfenced common area. OCGA § 16-13-31. The record affirmatively shows that a large number of persons other than Jordan had equal access to this location. See *Prescott v. State*, 164 Ga. App. 671, 673 (2) (297 SE2d 362) (1982). No direct evidence connected Jordan to the cocaine found outside the apartment other than the fact that he, like others, occupied a nearby residence. Id. The residue found in the apartment was not tested by the crime lab. The State presented no similar transaction evidence at Jordan's trial. Nor did any fingerprint evidence connect him with the contraband. Because the record shows that innumerable other persons had equal access to the cocaine at issue, the evidence supporting the trafficking charge was insufficient notwithstanding Jordan's tenancy of the apartment. See id.; see *Paden v. State*, 216 Ga. App. 188, 189 (1) (453 SE2d 788) (1995); see also *Nations v. State*, 177 Ga. App. 801, 802 (1) (341 SE2d 482) (1986) (physical precedent only); *Smith v. State*, 156 Ga. App. 102, 103 (1) (273 SE2d 918) (1980).

Furthermore, the State's attempts to connect Jordan to the cocaine through the apartment fail to exclude all other reasonable hypotheses but guilt. Although Jordan signed the lease on the two bedroom apartment, the undisputed evidence revealed that his nephew, Jonathan Green, who was arrested when the warrant was executed, lived there as well. Jordan testified that he had moved back with his father several weeks before the warrant was executed due to financial difficulties. He testified that he left his car at the apartment because it was broken[1] and he had not finished moving all of his belongings, including his stereo and the shotgun. He also

---

[1] A surveillance officer reported seeing Jordan in his car on the day the warrant was executed.

stated he had formerly occupied the north bedroom in the apartment where the only potentially incriminating evidence found was the measuring cup and the bottle of inositol powder. An officer admitted that the firearms were not illegal weapons.

In addition, the evidence connecting Jordan to the apartment in the weeks prior to the search was conflicting. On direct examination, the surveilling officer testified that he saw Jordan "mostly everyday" during the surveillance as well as before it, maybe 30 or 40 times.[2] During cross-examination, however, he testified first that "I didn't see him during surveillance. I've seen him there prior to the surveillance." He also stated that prior to the execution of the warrant he observed Jordan there nine or ten times. But the officer admitted that during the suppression hearing he had testified that "No, I can't rightly ever say I saw him during the execution of the warrant or during the surveillance." The owner of the apartment testified that he had not seen Jordan at the apartment in the weeks preceding the search and that Jordan had not paid his rent for the month.

The evidence, viewed in a light most favorable to the verdict, supports two theories, one consistent with innocence. *Morrison*, 220 Ga. App. at 153 (1) (a). Although the jury generally determines whether every other reasonable alternative but guilt has been excluded, " ' "we must not be blinded by that verdict when a reasonable hypothesis of innocence appears from the evidence or lack thereof, and may declare such as a matter of law." [Cits.]' " Id. Because there was no direct evidence connecting Jordan to the crime and the evidence did not exclude the reasonable hypothesis that the cocaine belonged to any of the men arrested during the search, tenants of the apartment building, or other unidentified individuals frequenting the premises, the verdict cannot be sustained.

*Judgment reversed. Johnson and Blackburn, JJ., concur.*

DECIDED MARCH 12, 1997.

*John L. Tracy*, for appellant.
*Britt R. Priddy, District Attorney, Max G. Factor, Assistant District Attorney*, for appellee.

---

[2] In light of the three day surveillance period and the officer's subsequent testimony, it appears that these numbers include the period prior to the initiation of surveillance, notwithstanding the State's assertion to the contrary. The officer testified that he knew Jordan because he had relatives in Jordan's neighborhood.