S96G1456. QUINN v. THE STATE.
(485 SE2d 483)

THOMPSON, Justice.

In *Quinn v. State,* 221 Ga. App. 399 (471 SE2d 337) (1996), a prosecution for trafficking in cocaine and methamphetamine, the Court of Appeals examined Quinn's claim that trial counsel was ineffective for failing to file a motion to suppress items seized from two vehicles and from his person. The Court of Appeals agreed that counsel's performance was deficient in this regard; however, it concluded that Quinn was not prejudiced under the second prong of *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), because the motion to suppress would have had little chance of success. In so ruling the court stated, "the trial court would also be authorized to find that, upon discovery of the large sum of money in the bag, a seizure of the person of defendant was proper." *Quinn,* supra at 403. We granted certiorari to review that statement.[1]

A Douglas County deputy sheriff on patrol during the Christmas holiday season was instructed to "check people walking, [and] check people sitting in parking lots," because there had been an unusual amount of crime reported in the area. The officer came upon two vehicles parked side by side in a shopping center parking lot after dark. A Trans Am, later identified as belonging to Quinn, was parked next to a Jaguar. A man who occupied the driver's seat of the Jaguar was leaning over toward the passenger side. The front passenger door was open and Quinn was seen kneeling down on the ground and leaning into the Jaguar. The deputy parked behind both cars, and he exited his vehicle. As he approached the men, the deputy observed

---

[1] We assume for purposes of this appeal that Quinn had standing to contest the seizure of the contraband.

Quinn "putting something up under the seat" of the Jaguar, and then standing up. The driver sat upright in the Jaguar. When the officer asked the two men what they were doing, Quinn responded that he was interested in buying the Jaguar. Both men were asked for identification and both produced driver's licenses, which appeared to be in order. (It was later learned that Quinn's license had been issued in a false name.) The officer noticed a bag on the front passenger seat and, thinking that it might be the item which Quinn had attempted to conceal, he asked what it contained. Both men replied that they did not know what was in the bag, but both gave the officer permission to inspect its contents. The bag contained $11,500 in cash. The officer testified at trial that upon discovering the contents of the bag, he called for backup. And, based on the information known to the officer, Quinn was no longer free to leave.

Quinn was then asked if he had a weapon. He responded that he had a pistol on the driver's seat of the Trans Am, and he gave his permission for the officer to retrieve it. Another officer arrived two minutes later. That officer opened the driver's door of the Jaguar and asked the driver to turn off the engine, whereupon he observed another paper bag, partially beneath the passenger seat. The officer picked it up and asked the driver what was in the bag; he responded that he did not know. However, the officer suspected that the bag contained contraband because the contents felt "powdery and crunchy." The officer requested but was denied permission to search the vehicle. He then replaced the paper bag in its original location.

Both men were secured in the back seat of the patrol car and *Miranda* warnings were administered while a narcotics detecting dog alerted on the passenger side of the Jaguar. A search warrant was obtained and quantities of cocaine and methamphetamine were seized from the Jaguar. Quinn denied that the money and drugs belonged to him. The driver testified as a state's witness at trial that the meeting in the parking lot had been prearranged to "exchange money for dope."

We hold, and the State concedes, that discovery of a large, unexplained sum of money, standing alone, does not constitute articulable suspicion of criminal activity which would justify seizure of an individual. The Court of Appeals erred to the extent that its opinion may suggest such a result. Accord *Polke v. State*, 203 Ga. App. 306 (1) (417 SE2d 22) (1992) (possession of large sums of money may be suspicious, but it is not itself a crime and does not provide probable cause for immediate warrantless arrest); *Gebremedhin v. State*, 202 Ga. App. 811 (415 SE2d 529) (1992) (a large sum of money was a contributing factor to establish probable cause for a drug arrest); *Brown v. State*, 191 Ga. App. 779, 780 (383 SE2d 170) (1989) (large sum of money discovered following consensual search, with no other articul-

able reasons for suspicion, did not provide probable cause for seizure of property). Thus, while the presence of the currency is insufficient by itself to demonstrate a connection to illegal activity, such evidence, together with other evidence of criminal activity, may provide a reasonable basis for the belief that the currency is substantially connected to an illegal exchange of drugs.

Not all encounters between police officers and citizens involve seizures which implicate Fourth Amendment protections. *Devier v. State*, 253 Ga. 604, 614 (7) (a) (323 SE2d 150) (1984). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions . . . ; [and] ask to examine the individual's identification, [cits.]; . . . — as long as the police do not convey a message that compliance with their requests is required." *Florida v. Bostick*, 501 U. S. 429, 434 (111 SC 2382, 115 LE2d 389) (1991). A seizure within the context of the Fourth Amendment occurs only when "by means of physical force or a show of authority . . . a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U. S. 544, 553-554 (100 SC 1870, 64 LE2d 497) (1980). The first officer was authorized to approach Quinn and his companion to inquire of their conduct and obtain identification. At that point, a reasonable person in Quinn's circumstances would believe that he was free to leave, and the Fourth Amendment was not implicated.

The discovery of the large sum of currency (pursuant to a consent search), combined with the *totality of the other circumstances* then known to the officers, authorized Quinn's brief detention at the scene. The events which followed, i.e., the presence of the pistol on the seat of his vehicle, the hidden bag which appeared to contain contraband, and the alerting by the narcotics dog, provided the probable cause necessary to obtain a search warrant. Accordingly, we agree with the conclusion of the Court of Appeals that the suppression motion would not have been meritorious and Quinn was not prejudiced under the second prong of *Strickland v. Washington*, supra.

*Judgment affirmed. All the Justices concur, except Benham, C. J., who concurs in the judgment only.*

DECIDED JUNE 2, 1997.

*Nina M. Svoren, Timothy P. Healy,* for appellant.
*David McDade, District Attorney, William H. McClain, Assistant District Attorney,* for appellee.