A98A1073. SMITH v. THE STATE.
(510 SE2d 295)

BEASLEY, Judge.

Ervin Smith, Bryant Wilburn and Arnell Rorie were indicted for possessing cocaine (OCGA § 16-13-30 (a)), possessing cocaine with intent to distribute (OCGA § 16-13-30 (b)), and possessing cocaine with intent to distribute within 1,000 feet of a public housing authority (OCGA § 16-13-32.5 (b)). Wilburn pled guilty; Smith and Rorie were tried before a jury.

At the close of the State's evidence, the court granted directed verdicts to Rorie on the two counts of possessing cocaine with intent to distribute. Rorie then pled guilty to the remaining charge of possessing cocaine. The court denied Smith's directed verdict motions,

and the jury found Smith guilty of all three charges. The simple possession charge was merged into the possession with intent to distribute charge, and a total sentence of 35 years was imposed.

Smith asserts on appeal that the court erred in denying his directed verdict motions because there is insufficient evidence that he possessed any cocaine. That is not so. The jury's verdict is entirely defensible under the law.

The standard for appellate review of the sufficiency of the evidence is set out in *Jackson v. Virginia*:[1] The question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The convicted person "no longer enjoys a presumption of innocence."[2] The role of the appellate court, the members of which are remote from the live presentation, is commensurately narrow, for it "determines only the legal sufficiency of the evidence" given to the factfinder "and does not weigh the evidence or assess the credibility of the witnesses."[3] In examining the evidence so as to determine whether the denial of the motion was permitted by law, all the evidence adduced, including that which is presented after the motion is ruled on, is considered.[4]

Police officers had a warrant to search Smith and his mobile home, as well as other occupants of it, for cocaine. Three of the officers went to the front door, knocked, announced they were police, and were greeted by sounds of someone running inside. It took two of them to break through the locked door by kicking. When Officer Frank Farr immediately approached Smith because he was lying on a sofa in the living room, Smith greeted him with "How ya doing, Frank?" He had made no effort to respond to the police knock but instead allowed a delay to occur before they gained entry. In the interval, the cocaine in packages (but for a package buried in the sofa and a package with only residue) almost disappeared down the sewer. Wilburn had run from the kitchen to the bathroom while the police were entering and dumped the packages. Two bags containing cocaine were found in Wilburn's pockets. Smith had $1,027 in small bills in his pocket.

A portable telephone and the police scanner were found in the living room, where defendant alone was present when the police entered. The scanner was operating audibly, tuned to the frequencies

---

[1] (Emphasis omitted.) 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979).

[2] (Citation and punctuation omitted.) *Hight v. State*, 221 Ga. App. 574-575 (1) (472 SE2d 113) (1996).

[3] (Citations and punctuation omitted.) Id.

[4] *Humphrey v. State*, 252 Ga. 525, 527 (1) (314 SE2d 436) (1984); *Coleman v. State*, 229 Ga. App. 642 (494 SE2d 549) (1997).

for the local police department and sheriff's office.[5]

Rorie was in the bedroom. The police brought her to the living room and had her sit on a couch other than the one on which Smith had been lying. Before she sat down, the police searched it and found no cocaine. Later, when the police moved Rorie from the couch, they searched it again and found a bag of cocaine under the cushion where she had been sitting. A urine sample provided by Rorie tested positive for cocaine.

The power bill for the residence was in Smith's own name. Although the phone bill was in the name of co-defendant Wilburn, who was Smith's nephew, Wilburn lived with his sister on an adjacent street. The bill for the month of July was over $200, covered many long distance calls, and followed a bill for over $170 the month before. In the hour to hour and a half the police were there, at least five calls came in for cocaine. The police recognized the voices of two of the callers.

The cocaine residue wrapped in tinfoil was behind a trash can next to the freezer in the kitchen area adjoining the living room where Smith was reclining.

Smith's defense was that although present when the search warrant was executed on his residence, Smith did not even have joint constructive possession of any of the cocaine which constituted the basis for the three charges.

His two witnesses testified that they had purchased Smith's 1978 Chevrolet truck from him the same day as the incident on trial (October 6, 1995) and paid $1,200 in cash for it. That was offered to explain the $1,027 police found in his pocket in small bills and to eliminate the inference that the large amount of cash was proceeds of drug sales. No money was found on the person of co-defendant Wilburn or elsewhere on the premises; the female co-defendant was not searched.

One of the witnesses, Smith's father, said he paid all of the $1,200. The other witness, Smith's nephew and the brother of the co-defendant who was found flushing cocaine packets down the commode, testified that he and his grandfather bought the truck together. They had no documents with respect to the truck, it was not

---

[5] In this case, as frequently happens, a diagram was used during trial and not included in the record because it was not introduced into evidence. Such documents, even though not physically entered as an exhibit, should be part of the record because they constitute a vital visual aid to understanding the evidence when reference is made in testimony to "here" and "there" and spatial and relational information is pointed out. In this case a drawing of the interior of the mobile home prepared by two police officers on the scene was used as a demonstrative aid. Thus the jury could grasp evidence by seeing that to which this Court is not privy.

registered, tagged or insured, and they said it merely stayed on the farm.

The jury rejected the defense and excluded not only the theory promoted by defendant but any other reasonable hypothesis deducible from the evidence, in keeping with the trial court's instructions.[6] The State's evidence implicating Smith, although circumstantial, permitted reasonable inferences that he was indeed criminally involved in the drug trade being conducted at the mobile home shared by him and his girlfriend, the co-defendant who pleaded guilty to possession mid-trial.

This evidence supports a finding of Smith's joint constructive possession, as defined in *Shropshire v. State*,[7] at the very least as an aider and abettor to Smith's two companions, both of whose guilty pleas were known to the jury. The court fully instructed the jury on these principles, as well as on mere presence, mere association, and equal opportunity. Evidence of one of these relationships alone is not enough.[8] But "[w]here there is evidence other than a defendant's own equal access connecting an accused to contraband, as here, it is for the jury to determine guilt or innocence."[9] No objection was made to any of the charges or to the recharge on the same principles after the jury requested clarification.

There indeed was evidence "other than [Smith's] own equal access connecting [him] to contraband," and thus it was "for the jury to determine guilt or innocence."[10] Presence, companionship, and conduct before and after the offense are circumstances allowing an inference of criminal intent.[11]

*Judgment affirmed. Andrews, C. J., McMurray, P. J., Blackburn, Ruffin and Eldridge, JJ., concur. Pope, P. J., dissents.*

POPE, Presiding Judge, dissenting.

I dissent from the majority view because I do not believe that the state's circumstantial evidence against Smith was sufficient to prove beyond a reasonable doubt that Smith had joint constructive possession of cocaine found under the direct control of other people.

In determining the sufficiency of the evidence, we review the evi-

---

[6] OCGA § 24-4-6. See *Blair v. State*, 216 Ga. App. 545, 546 (1) (455 SE2d 97) (1995) (only reasonable hypotheses of innocence must be excluded).

[7] 201 Ga. App. 421 (411 SE2d 339) (1991).

[8] *Murrell v. State*, 200 Ga. App. 231, 233 (1) (407 SE2d 460) (1991).

[9] *Williams v. State*, 207 Ga. App. 782, 784 (4) (429 SE2d 153) (1993).

[10] Id.; *Paden v. State*, 216 Ga. App. 188, 189 (1) (453 SE2d 788) (1995) (need connection other than spatial proximity); *Whipple v. State*, 207 Ga. App. 131, 132 (1) (427 SE2d 101) (1993) (need more than presence); *Whitfield v. State*, 217 Ga. App. 402, 405 (3) (457 SE2d 682) (1995) (example of facts in addition to spatial proximity).

[11] *Lu v. State*, 223 Ga. App. 336, 338 (477 SE2d 581) (1996).

dence in the light most favorable to the verdict. *Jordan v. State*, 225 Ga. App. 424 (484 SE2d 60) (1997). Viewed in that light, the evidence shows that police officers executed a search warrant at the mobile home where Smith lived. When the police entered the home, Smith was lying on a couch in the living room, Wilburn ran from the kitchen to the bathroom, and Rorie was in a bedroom. The police brought Rorie from the bedroom to the living room and had her sit on a couch. Before Rorie sat on the couch, which was not the same couch on which Smith had been lying, the police had searched it and found no cocaine. Later, when the police moved Rorie from the couch, they searched it again and found a bag of cocaine under the cushion where she had been sitting. A urine sample provided by Rorie tested positive for cocaine.

Several officers chased Wilburn into the bathroom, where they saw him flushing plastic bags down the toilet. The officers seized one bag of cocaine from the toilet. They also found two bags containing cocaine in Wilburn's pockets, seven $20 bills in his pocket and a packet containing cocaine residue behind a trash can in the kitchen. While the police were searching the home, two people called on the telephone for Wilburn and the police heard the callers ask Wilburn for cocaine.

The police searched Smith and found $1,027 in his pocket, but did not find any cocaine on him. They also did not find any cocaine on the couch where he had been lying. The officers did find a police scanner behind a chair in the living room. Smith did not testify in his own defense, but presented two witnesses who said they had purchased a pickup truck from him for $1,200, which they paid in cash.

"We have consistently held that merely finding contraband on premises occupied by a defendant is not sufficient to support a conviction if it affirmatively appears from the evidence that persons other than the defendant had equal opportunity to commit the crime. [Cits.] Where there is evidence other than a defendant's own equal access connecting an accused to contraband, it is for the jury to determine guilt or innocence." *Williams v. State*, 207 Ga. App. 782, 784 (4) (429 SE2d 153) (1993). In the instant case, I disagree with the majority conclusion that there is evidence other than Smith's occupancy of the house which connects him to the cocaine found in the possession of Wilburn and Rorie. Most of the cocaine was found under the direct control of Wilburn in the bathroom, while the cocaine residue was found in the kitchen immediately after Wilburn had run from there to the bathroom. The other cocaine was found beneath the couch cushion where Rorie had been sitting. No cocaine was found in Smith's possession.

The majority does not specify exactly what evidence other than Smith's occupancy of the mobile home connected him to Wilburn's

and Rorie's cocaine. Presumably the majority is persuaded by the state's reliance on evidence of the money found on Smith, the scanner and the two callers asking to buy drugs from Wilburn. Contrary to the state's claims, there is no evidence that the money is connected to the cocaine found on Wilburn and Rorie. The mere presence of the currency is insufficient to demonstrate a connection to illegal activity. See *Quinn v. State*, 268 Ga. 70, 72 (485 SE2d 483) (1997). Likewise, it is unclear from the state's argument and the majority opinion how telephone calls for Wilburn and the presence of a scanner connect Smith to cocaine found in Wilburn's and Rorie's possession.

The majority states that the evidence supports a finding that Smith had joint constructive possession of the cocaine. However, "[a] finding of constructive possession must be based upon some connection between the defendant and the contraband other than spatial proximity. Evidence of mere presence at the scene of the crime, and nothing more to show participation of a defendant in the illegal act, is insufficient to support a conviction." (Citations and punctuation omitted.) *Paden v. State*, 216 Ga. App. 188, 189 (1) (453 SE2d 788) (1995). Here, although Smith's occupancy of the home raised an inference that he constructively possessed cocaine found in the home, that inference was affirmatively rebutted by the proof of Wilburn's and Rorie's more than equal access to the cocaine. See *Shreve v. State*, 172 Ga. App. 190, 191 (322 SE2d 362) (1984). Thus, all that remains is Smith's mere presence in the home while Wilburn and Rorie possessed cocaine. "As a matter of law, that presence is not enough to support a finding of criminal possession of the contraband beyond a reasonable doubt, to the exclusion of every other reasonable hypothesis." *Whipple v. State*, 207 Ga. App. 131, 132 (1) (427 SE2d 101) (1993).

"[W]here a conviction for possession of contraband depends entirely on circumstantial evidence, it must both be consistent with the hypothesis of guilt and must exclude every other reasonable hypothesis. When the circumstantial evidence supports more than one theory, one consistent with guilt and another with innocence, it does not exclude every other reasonable hypothesis except guilt and is not sufficient to prove the defendant's guilt beyond a reasonable doubt. While the determination of whether the circumstances are sufficient to exclude every reasonable hypothesis except that of defendant's guilt is usually made by the jury and while we must view the evidence in the light most favorable to the jury verdict, we must not be blinded by that verdict when a reasonable hypothesis of innocence appears from the evidence or lack thereof, and may declare such as [a] matter of law." (Citations and punctuation omitted.) *Paden v. State*, 216 Ga. App. at 189 (1). See *Jordan v. State*, 225 Ga. App. at 425-426.

In the present case, the state's circumstantial evidence against Smith does not exclude the reasonable hypothesis that all of the cocaine was under the control of Wilburn and Rorie and that Smith was a mere occupant of the mobile home who did not possess the cocaine. Because there is no evidence connecting Smith to the cocaine other than his occupancy of the mobile home, the trial court erred in denying Smith's motion for a directed verdict of acquittal due to insufficient evidence. See *Morrison v. State*, 220 Ga. App. 151, 152-154 (1) (a) (469 SE2d 686) (1996); *Nations v. State*, 177 Ga. App. 801, 802 (1) (341 SE2d 482) (1986).

DECIDED NOVEMBER 12, 1998 ▮

*James W. Smith*, for appellant.
*Timothy G. Madison, District Attorney, Kevin J. Guidry, Robin R. Riggs, Assistant District Attorneys*, for appellee.