**UNITED STATES of America,**

v.

**Dennis Pierre JOHNSON, Defendant.**

**No. 7:99–CR–12(WDO).**

United States District Court,
M.D. Georgia,
Valdosta Division.

Nov. 17, 1999.

1380

James Wilson Smith, Athens, GA, for Dennis Pierre Johnson, defendant.

Donald Lamont Johstono, Albany, for U.S.

## ORDER

OWENS, District Judge.

Before the court is defendant Johnson's Motion to Suppress [Tab # 21] evidence discovered during a search of the tractor-trailer he was driving on March 10, 1999. Having carefully considered the evidence in the file, the evidence presented at the suppression hearing (held on September 23, 1999), and any and all other evidence and legal principles pertaining to this case, the court issues the following order.

## I. Facts

On March 10, 1999, at approximately 3:15 p.m., Lowndes County Deputies Brian Flemming and B. Benefield stopped the defendant for not maintaining a readable valid county sticker on his license tag, in violation of O.C.G.A. § 40–2–8(c), and for driving an unsafe and improperly equipped vehicle in violation of O.C.G.A. § 40–8–7.

Specifically, Officer Flemming testified that he stopped defendant because, as he approached defendant (who was also traveling Northbound on I–75) from the rear, Flemming noticed that the county sticker on the tractor-trailer's license tag was not readable. Additionally, as Flemming progressed forward on the vehicle, he noticed that the air hose line between the tractor and the trailer, which was intertwined with a "heavy-duty" set of jumper cables, was swinging back and forth across the trailer deck. Flemming deemed the cable situation hazardous and a violation of Georgia traffic laws. As a result, Flemming and Benefield stopped the defendant in order to issue him citations or warnings.

As Flemming processed warning citations for the traffic violations, he noticed the following suspicious circumstances: 1) a passenger was present in the vehicle (which Flemming found unusual for a commercial tractor-trailer); 2) defendant was hauling produce which is a common cover for drug trafficking; 3) defendant was missing certain logbook entries; 4) defendant talked incessantly about irrelevant and random topics; 5) the truck that the defendant was driving was labeled D & C trucking (names indicated by initials are easily transferred and common to smugglers); and 6) defendant was traveling on what is known as the drug pipeline. Based on his suspicion, Flemming asked defendant if he had any illegal drugs or large amounts of currency in the truck. Johnson stated that he had neither. Flemming then asked if he could search the vehicle that the defendant was driving. Defendant stated, "let me get the keys."

The search uncovered $43,980 in U.S. currency concealed inside a box located under the sleeper of the tractor. Both Johnson and Skelton (his passenger) denied any knowledge of the money.

Based on the above-listed factors as well as the large cache of cash, the officers detained the individuals in order to conduct a more thorough search of the vehicle. The vehicle was transported (via pri-

vate tow truck), along with the defendants (in separate police cars), to a bottling company, which had refrigeration facilities (to protect the produce), in order to search the contents of the vehicle. Three point two (3.2) kilograms of cocaine was then discovered in a plastic bag under a speaker box that was located under the sleeper.

## II. Discussion

### A. Stop

■ Defendant Johnson argues that the evidence should be suppressed because Deputies Benefield and Flemming did not have probable cause for the initial stop. Johnson submits that Benefield and Flemming first noticed him as the officers were traveling South on I–75 and he was traveling North. Johnson argues that the officers then crossed the median in order to engage the defendant[1]. Flemming testified that they did not cross the median for this purpose. Flemming stated that it was his regular practice to periodically enter the flow of traffic for several miles then return to his stationery point. Flemming states that the first time he observed defendant was as Flemming approached defendant from the rear. Flemming testified that this is when he noticed that the county sticker was not readable. As Benefield and Flemming proceeded closer toward the cab of the rig, he noticed that the air hose line was intertwined with a large set of jumper cables and the combination was swinging across the trailer deck. Flemming deemed the combination a hazard to defendant and others. Flemming also testified that, from his vantage point, he could not ascertain the identity of the driver until after the stop (in contradiction with defendant's allegation of racial targeting).

Regardless of Deputy Flemming's or Deputy Benefield's motive, all evidence indicates that the officers had probable cause to believe the defendant was in viola-

tion of Georgia traffic laws: O.C.G.A. 40–2–8(c) and O.C.G.A. 40–8–7(a). In *Whren v. U.S.*, 517 U.S. 806, 116 S.Ct. 1769, 1772–1777, 135 L.Ed.2d 89 (1996), the Supreme Court held that the temporary detention of a motorist upon probable cause to believe that he has violated the traffic laws does not violate the Fourth Amendment's prohibition against unreasonable seizures, even if a reasonable officer would not have stopped the motorist absent some additional law enforcement objective. In this case, the initial stop was supported by probable cause that Johnson was violating this state's traffic laws by not maintaining a readable county sticker and having dangerous equipment (air hose/jumper cable combination swinging across the deck of the tractor), regardless of any ulterior motive. Accordingly, Johnson's motion to suppress should be denied on this basis.

### B. Detention

Johnson also argues that the evidence should be suppressed because, assuming the initial stop was lawful, the defendant was unreasonably detained and interrogated in connection with the traffic violations.

■ A police officer may briefly detain an individual for investigative attention if the officer has a reasonable suspicion based on articulable facts that criminal activity is taking place. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "Even when officers have no basis for suspecting a particular individual, they may generally ask questions ...—as long as the police do not convey a message that compliance with their requests is required." *Quinn v. The State*, 268 Ga. 70, 72, 485 S.E.2d 483 (1997)(*quoting Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991)). Furthermore, it is lawful to ask for con-

1. While defendant cites Exhibit A to their Memorandum as support for his allegation that Benefield and Flemming crossed the median in order to engage defendant, Exhibit A does not contain this information. Further, the court found no other evidence in support of defendant's theory that the officers crossed the median in order to engage him. The officer testified that he crossed the median periodically in order to observe traffic. Flemming stated that he did not notice defendant until they approached him from the rear.

sent to search while completing paperwork for traffic violations. *See Ohio v. Robinette,* 519 U.S. 33, 35–36, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996); *United States v. Simmons,* 172 F.3d 775, 778 (11th Cir.1999)(Officers may ask for consent to search a vehicle once the vehicle is validly stopped and the citations are being processed.)

■ Based on the following factors: 1) a passenger was present in the vehicle; 2) defendant was hauling produce; 3) defendant was missing certain logbook entries; 4) defendant talked incessantly about irrelevant and random topics; 5) the truck was labeled D & C Trucking (names indicated by initials are easily transferred and common to smugglers); and 6) defendant was traveling on what is known as the drug pipeline, Deputies Benefield and Flemming had reasonable suspicion to detain the defendant for further investigation and request consent to search the vehicle. Further, the short period of detention and interrogation following the initial stop was entirely reasonable based on the circumstances (approximately twenty minutes elapsed between the time the vehicles stopped and the cash was discovered).

## C. Consent

Defendant also argues that the extent of the search exceeded the scope of his consent. Defendant argues that he did not consent to a full search of his tractor and trailer. The government contends that the defendant did consent to a full search of the vehicle.

According to the opinion of the United States Supreme Court in *Schneckloth v. Bustamonte,* 412 U.S. 218, 249–50, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) an examining court should apply a totality of the circumstances test when deciding the voluntariness of a defendant's consent to search. Pursuant to this analysis, the Government must prove that a defendant freely and voluntarily consented to a search. *United States v. Hidalgo,* 7 F.3d 1566, 1571 (11th Cir.1993).

Johnson willingly consented to the search of the tractor-trailer. Further, based on the court's review of the videotape and the testimony at the suppression hearing, defendant placed no restrictions or conditions on his consent. After the Deputies gave Johnson warning tickets for the traffic violations, the following dialogue took place:

Deputy: Were you there when they loaded the truck?

Johnson: Yes.

Deputy: There's nothing illegal in the trailer then?

Johnson: No.

Deputy: There's nothing illegal in the tractor?

Johnson: No.

Deputy: No firearms, no alcohol, no drugs, no large amounts of cash over $10,000?

Johnson: None of that.

Deputy: Well then do you mind if we search the truck?

Johnson: Let me get the keys.

■ Based on the Court's review of the videotape and the testimony at trial, it does not appear that Defendant Johnson imposed any restraints or conditions on the search. Further, based on the totality of the circumstances, defendant Johnson voluntarily consented to the search.

## D. Arrest

■ Defendant Johnson also argues that his arrest was illegal because it was not based on probable cause to arrest. Specifically, Johnson argues that he was placed under arrest after the officers discovered the money and before they discovered the alleged narcotics. Johnson argues that the officers did not have probable cause for arrest based simply on the finding of the money.

Officer Flemming testified at the Motion to Suppress hearing that they did not place defendant under arrest before they transferred him away from the interstate.

Flemming stated that they were simply transporting him to fill out paperwork in conjunction with his expired medical certificate. Flemming was only to be arrested if they discovered more incriminating contraband during a further search.

A seizure within the context of the Fourth Amendment occurs only when "by means of physical force or a show of authority... a reasonable person would have believed that he [or she] was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 1876–77, 64 L.Ed.2d 497 (1980).

■ This Court agrees with the defendant that, under the circumstances, a reasonable person would have believed that he or she was under arrest. Upon discovery of the cash, the defendants were immediately told to place their hands on the police car. Then they were told to get on the ground and were handcuffed by the officers and told they would be read their rights later. Shortly thereafter, the defendants were read their rights and placed in separate police cars in order to be transferred to the station. A reasonable person in either of the defendants positions would certainly not have believed that they were free to leave. On the contrary, a reasonable person would have believed that he/she was under arrest. Since, the defendants were under arrest at this point, the Court must determine if probable cause existed at that point warranting an arrest.

■ Discovery of a large, unexplained sum of money, standing alone, does not constitute articulable suspicion of criminal activity which would justify seizure of an individual. *Quinn v. The State*, 268 Ga. 70, 71, 485 S.E.2d 483 (1997). Thus, while the presence of the currency is insufficient by itself to demonstrate a connection to illegal activity, such evidence, together with other evidence of criminal activity, may provide a reasonable basis for the belief that the currency is substantially connected to an illegal exchange of drugs. *Id.* at 72, 485 S.E.2d 483.

Accordingly, the court must determine if the arrest was supported by probable cause. While large sums of currency cannot justify an arrest standing alone, the officers in this case had other suspicious circumstances (passenger present, cargo of produce, missing logbook entries, nervous behavior, trucking company with two initials, traveling on drug pipeline) which, combined with the cash ($43,980) and the defendant's denial of having any large amounts of cash, constituted probable cause necessary to seize the defendants.

Accordingly, having found no basis for the suppression of the contraband, defendant Johnson's Motion to Suppress is **HEREBY DENIED.**