## A06A2229. MITCHELL v. THE STATE.
(641 SE2d 674)

MIKELL, Judge.

After a jury trial in the Superior Court of Calhoun County, Matthew Mitchell was convicted on two counts of sale of cocaine (Counts 1 and 2) and acquitted of sale of methamphetamine (Count 3) and a third count of sale of cocaine (Count 4). On appeal, Mitchell raises the single enumeration of error that the trial court erred when it allowed a witness to identify Mitchell in two photographs introduced into evidence by the state. We agree and reverse.

"On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence."[1] So construed, the

---

[4] *Solomon v. Barnett*, 281 Ga. 130, 131 (636 SE2d 541) (2006).

[5] Id. at 132.

[6] See *Ades*, supra at 10 (1); *Dover v. Mathis*, 249 Ga. App. 753, 754 (549 SE2d 541) (2001).

[1] (Citation omitted.) *Herring v. State*, 263 Ga. App. 470 (1) (588 SE2d 286) (2003).

evidence shows that while working in an undercover capacity, Investigator Shannon McCook of the Pataula Drug Task Force purchased cocaine from Mitchell on May 15, 2003, May 16, 2003, and July 9, 2003, and Georgia Bureau of Investigation Agent Nikki Rhodes purchased methamphetamine from Mitchell on May 16, 2003.[2] A forensic chemist from the state crime lab confirmed that the substances sold were cocaine and methamphetamine. The state also introduced into evidence and played for the jury the surveillance videotapes of each transaction.

McCook testified that he took still photographs from the May 15 and May 16 videotaped transactions, which the state introduced as Exhibits 9 and 11, respectively. Rhodes showed the photographs to Mitchell during an interview, and Mitchell denied that he was the person depicted in the photographs. Deputy Walt Ingram of the Calhoun County Sheriff's Department testified at trial and identified the person depicted in Exhibits 9 and 11 as Mitchell. Ingram explained that he knew Mitchell and thus would recognize him in a photograph. It is Ingram's testimony that Mitchell argues warrants the reversal of his conviction on the ground that it invaded the province of the jury. In support of this argument, Mitchell relies on our whole court decision in *Carter v. State*,[3] where we affirmed the grant of the state's motion in limine to prevent the defendant from introducing the opinion testimony of his mother and aunt that he was not one of the perpetrators depicted in a videotape of a crime scene.[4]

Generally, identification testimony is "admissible when relevant and supported by facts,"[5] and "within the trial courts' control subject to appellate review for abuse of discretion."[6] However, a lay witness's testimony concerning an identification should be admitted for the jury's consideration *only* if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury[, as when] the witness is "familiar with the defendant's appearance around the time [a] surveillance photograph was taken and the defendant's appearance has changed prior

---

[2] Rhodes was not present during the July drug transaction.

[3] 266 Ga. App. 691 (598 SE2d 76) (2004).

[4] Id. at 692 (2). *Carter* overruled Division 6 of our opinion in *Jackson v. State*, 262 Ga. App. 451 (585 SE2d 745) (2003), wherein we permitted the neighbor of the defendant, who saw an excerpt of a store's surveillance video of an armed robbery on a local television broadcast, to testify that the person in the video was the defendant, concluding that *Jackson* should not be construed as allowing opinion testimony on the question of the defendant's identity. *Carter*, supra at 693 (2).

[5] *Clark v. State*, 153 Ga. App. 829, 831 (2) (266 SE2d 577) (1980).

[6] *Johnson v. State*, 272 Ga. 254, 256 (1) (526 SE2d 549) (2000).

to trial,"[7] or when the witness knows about some other distinctive but presently inaccessible characteristic of the defendant's appearance.[8]

We note that although our opinion in *Carter* cited *Smith v. State*[9] in support of its conclusions, the Supreme Court of Georgia used the latter occasion to voice serious doubt that to admit opinion testimony on a question of fact is "to invade the province of the jury." As our Supreme Court observed in *Smith*:

> Concerning the rule that an opinion should not be allowed which would "usurp the functions of the jury," Wigmore wrote in 1940 that it is so misleading and unsound that it should be entirely repudiated, and concerning the rule that an opinion should not be allowed "on the very issue before the jury," Wigmore said that it is another erroneous test, impracticable, misconceived, and lacking any justification in principle.[10]

Following the trend thus begun more than 60 years before, the *Smith* court went on to adopt the majority rule allowing the jury to consider expert testimony on the ultimate issue before it — there, whether the defendant suffered from battered woman's syndrome.[11]

The fact remains, however, that *Smith* deals only with expert testimony, which is admissible "where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the average layman,"[12] whereas the case before us involves testimony by a police officer on the question whether, based on his previous acquaintance with Mitchell, the latter is the person shown in the surveillance photographs. As such, the officer's opinion is worth neither more nor less than that of any other witness on the same subject.[13]

It thus remains improper to allow a witness to testify as to the identity of a person in a video or photograph when such opinion evidence tends only to establish "a fact which average jurors could

---

[7] (Citation omitted.) *Bradford v. State*, 274 Ga. App. 659, 661 (3) (618 SE2d 709) (2005).

[8] Id. (affirming admission of testimony by store owner and former employer identifying defendant as the person on videotape of store robbery on the basis of his distinctive body movements).

[9] 247 Ga. 612 (277 SE2d 678) (1981).

[10] (Citation omitted.) Id. at 615.

[11] Id. at 619-620.

[12] (Citations omitted.) Id. at 619.

[13] See *Carter*, supra at 693 (2) (noting that allowing lay witnesses' testimony as to identity "would open floodgates of witnesses for both sides"); but see *Sizemore v. State*, 251 Ga. 867, 868 (2) (310 SE2d 227) (1984) (officer's testimony identifying dead victim in photograph was admissible even though prejudicial).

decide thinking for themselves and drawing their own conclusions."[14] There was no evidence offered here that Mitchell's appearance had changed by the time of trial or that he exhibited some characteristic that made Ingram more likely to identify him correctly than the members of the jury.[15] Thus we conclude that the trial court abused its discretion when it admitted Ingram's testimony because that testimony was offered to establish a fact which the jurors could decide for themselves on the basis of the evidence presented.[16]

The state argues that the admission of Ingram's testimony, if error, was harmless. We cannot agree. The indictments related to the drug transactions that occurred on May 16, 2003, show that the sale of cocaine (Count 2) occurred at 8:09 p.m. and that the sale of methamphetamine (Count 3) occurred at 9:19 p.m. As stated earlier, the transaction was videotaped, but McCook testified that the second portion of the videotape was black as it was "pretty dark" by 8:30 p.m. Ingram identified Mitchell in two photographs, the first of which, Exhibit 9, was taken from the videotape depicting the drug sale that occurred on May 15, which was the offense described in Count 1 of the indictment. The second photograph, Exhibit 11, was taken from the earlier transaction on May 16 because it was taken from the portion of the videotape that was recorded before dark, which would have shown the sale of cocaine referenced in Count 2. Mitchell was convicted only of Counts 1 and 2, despite the evidence from the officers involved that he was also the person who sold them the drugs referenced in Counts 3 and 4 of the indictment. The only distinguishing factor between evidence offered on Counts 1 and 2, as opposed to Counts 3 and 4, was Ingram's identification testimony. Because the jury accorded greater weight to Ingram's testimony, we cannot find its admission harmless and must reverse Mitchell's convictions.

*Judgment reversed. Blackburn, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 6, 2007.

*Richard Parker*, for appellant.

---

[14] (Citations omitted.) *Carter*, supra at 693 (2). See also *Williams v. State*, 254 Ga. 508, 510, n. 2 (330 SE2d 353) (1985).

[15] Ingram's identification testimony was offered by the state *before* the jury was told that the defendant denied being the perpetrator depicted in the photograph. Thus Ingram's testimony was not offered for impeachment.

[16] See generally *State v. A 24 Hour Bail Bonding*, 280 Ga. App. 463, 465 (3) (634 SE2d 99) (2006) (admission of bail bondsmen's purported expert opinions as to the principal's true name was erroneous as determination of the principal's true name did not require the drawing of a conclusion beyond the ken of the average layman).

*Joseph K. Mulholland, District Attorney, Samuel M. Olmstead, Assistant District Attorney*, for appellee.