## S07A1253. DAWSON v. THE STATE.
### (658 SE2d 755)

BENHAM, Justice.

Ladaris Hawkins was found dead in a College Park hotel room on October 15, 1998, having suffered fatal gunshot wounds to the back of his head. Three days later, Phillip Dover, Ronald Gutkowski, and Gerrold Shropshire were found dead in an Atlanta hotel room, each having suffered a fatal gunshot wound to the back of his head. About two weeks after the trio was killed, appellant Timothy Dawson was stopped for a traffic violation near Memphis, Tennessee. When appellant told the officer he had a loaded gun in the glove compartment, a weapons violation in Tennessee, the officer obtained appellant's consent to search the vehicle and retrieved the gun. Appellant was arrested for the weapons violation and, during a search of the vehicle following appellant's arrest, officers recovered identification documents belonging to the four men murdered in Fulton County. Appellant was tried and convicted for the murders in Fulton County.[1]

---

[1] The Fulton County grand jury returned a true bill of indictment on November 11, 1998, charging appellant with four counts of malice murder and twelve counts of felony murder, with the predicate felony in four counts being armed robbery, in another four counts being aggravated assault, and possession of a firearm by a convicted felon in the final four counts;

1. The State presented expert evidence that the gun found in appellant's car was the weapon which had fired the shots that killed the four men, and the baseball cap appellant was wearing at the time of his arrest contained the DNA of one of the victims. The State also presented evidence that appellant and two friends used the Atlanta hotel victims' tickets, at appellant's invitation, to attend a professional football game the day after the three victims were killed; appellant was identified as the person seen in a hotel surveillance tape in the hotel elevator with one of the victims shortly before the trio of victims was shot, and as the person leaving the hotel with a cooler belonging to one of the victims; and a duffle bag belonging to one of the victims was on the seat of the car appellant was driving at the time of his arrest. The evidence was sufficient to authorize the jury to find appellant guilty beyond a reasonable doubt of all the charges. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends the trial court erroneously prohibited him from presenting evidence that the murders were actually committed by a drug-dealing gang who planted evidence incriminating appellant in retaliation for appellant having purportedly "snitched" on one of the gang members who was allegedly dealing drugs in a local jail with the complicity of deputy sheriffs.

A defendant is entitled to introduce relevant and admissible evidence implicating another person in the commission of the crime or crimes for which the defendant is being tried. See *Henderson v. State*, 255 Ga. 687 (1) (341 SE2d 439) (1986). "[T]he proffered evidence must raise a reasonable inference of the defendant's innocence and it must directly connect the other person with the corpus delicti or show that the other person has recently committed a crime of the same or similar nature." *Oree v. State*, 280 Ga. 588, 593 (5) (630 SE2d 390) (2006). The proffered evidence "cannot raise the mere speculation that some other person committed the crime" (*Lance v. State*, 275

eight counts of aggravated assault and four counts of armed robbery, two counts of possession of a firearm by a convicted felon, and two counts of possession of a firearm during the commission of a crime. The District Attorney filed his notice of intent to seek the death penalty and appellant sought and obtained an interim appeal which resulted in this Court's opinion in *Dawson v. State*, 274 Ga. 327 (554 SE2d 137) (2001). Upon return of the case to the trial court, the guilt/innocence phase of appellant's death penalty trial commenced on September 26, 2002, and concluded on November 6, 2002, with return of the jury's guilty verdicts. The sentencing phase of the trial commenced on November 7 and concluded on November 14, 2002, with the filing of the jury's sentence of life imprisonment without the possibility of parole and the filing of the sentences imposed by the trial court. Appellant filed a motion for new trial on November 26, 2002, and amended it on August 18 and September 19, 2006. After conducting a hearing on September 21, 2006, the trial court denied the motion for new trial on September 27, 2006. Appellant filed a timely notice of appeal on October 17, 2006, and the appeal was docketed in this Court on May 2, 2007. Oral argument was heard on September 24, 2007.

Ga. 11, 18 (13) (b) (560 SE2d 663) (2002)), and it must do more than "raise a conjectural inference that another person committed the murder[s]." *Azizi v. State*, 270 Ga. 709, 714 (6) (512 SE2d 622) (1999). Inasmuch as appellant's theory was speculative and conjectural, did not connect a specific person with the crimes, and did not raise a reasonable inference of appellant's innocence, the trial court did not err when it refused to allow appellant to present evidence in support of his speculations before the jury.

3. Contending that the State did not provide the statutory authentication necessary for the admission of a videotape and the images captured thereon, appellant next takes issue with the admission into evidence of videotaped images captured by surveillance cameras located in the Atlanta hotel where the last three victims were killed.

OCGA § 24-4-48 provides two methods by which photographs, motion pictures, videotapes, and audio recordings may be admitted; they are not the exclusive methods of introducing such media into evidence, "but shall be supplementary to any other statutes and lawful methods existing in this state." OCGA § 24-4-48 (d). Subsection (b) states that the above-listed evidence, subject to any other valid objection, "shall be admissible in evidence when necessitated by the unavailability of a witness who can provide personal authentication and when the court determines, based on competent evidence presented to the court, that such items tend to show reliably the fact or facts for which the items are offered." Subsection (c) provides that, subject to any other valid objection, the above-listed items which were

> produced at a time when the device producing the items was not being operated by an individual person or was not under the personal control or in the presence of an individual operator shall be admissible in evidence when the court determines, based on competent evidence presented to the court, that such items tend to show reliably the fact or facts for which the items are offered, provided that prior to the admission of such evidence the date and time of such photograph, motion picture, or videotape recording shall be contained on such evidence and such date and time shall be shown to have been made contemporaneously with the events depicted in the photograph, videotape, or motion picture.

At the hearing on the motion in limine filed by appellant, the hotel's director of security described the hotel's 16-camera surveillance system as one where each camera fed images to a "multiplexer" which produced a single videotape containing all the images. The hotel's

security dispatch room was equipped with two monitors displaying the images captured by the various cameras for intervals of three to five seconds, and was staffed by hotel security personnel twenty-four hours a day, every day of the week. No employee was responsible solely for watching the monitors, and the security personnel were trained to operate the equipment only to the extent of removing a completed tape from the machine and inserting a fresh tape. When viewed, the videotape at issue contained a date-time stamp which, according to the hotel security director, accurately reflected the passage of time and accurately reflected the date, but the time entry was "off" by one hour and forty-two minutes. Relying on date-specific markings on the videotape, the hotel security director identified the videotape as the one which contained the images recorded on October 17, 1998, and which he had retrieved from the equipment in the security dispatch office at the request of investigating police officers on October 18, 1998.

The trial court found that personal authentication could have been provided by both the victim and appellant and that both were unavailable to provide the authentication. The trial court also found that security personnel in the dispatch office when the images were being captured did not qualify as authenticating witnesses, based on the testimony of the hotel security director that security personnel in the security dispatch office were not assigned to monitor the images captured by the cameras. The trial court relied on the security director's testimony that the cameras operated properly and continuously, were capable of reliably recording the scene, and did record the scene contemporaneously. Ultimately, the trial court ruled the videotape was admissible, with the discrepancy concerning the time stamp going to the weight to be given the videotape by the factfinder and not its admissibility.

We agree with the trial court that the videotape was admissible under OCGA § 24-4-48 (c). The testimony of the hotel security director that the security personnel in the dispatch office were not trained to operate machinery in the dispatch room and did nothing more than remove a spent videotape and replace it with a fresh tape established that the devices producing the images that were recorded on the videotape were not operated by a person or under the personal control or in the presence of an individual operator. Id. The videotape contained a date-time stamp, and it was established that the date and time stamp was made contemporaneously with the events depicted in the videotape. Although the date-time stamp was admittedly inaccurate, being 104 minutes "off," we conclude that the statute's intent, insofar as admissibility is concerned, is that the proffered evidence show a contemporaneous recording of the passage of time. That the date-time stamp does not reflect the actual time when the images

were captured goes to the weight to be given the evidence, not its admissibility. See *Holloway v. State*, 287 Ga. App. 655 (2) (653 SE2d 95) (2007). See also *State v. Ayscue*, 169 N.C. App. 548, 551-552 (610 SE2d 389) (2005) (time and date discrepancy did not render it inadmissible).

Appellant also asserts that the videotape was rendered inadmissible by its purported poor quality. However, the quality of the tape does not preclude its admission. See *Cromartie v. State*, 270 Ga. 780 (1) (514 SE2d 205) (1999) (noting the inclusion in the evidence against the defendant of a video "too indistinct to conclusively identify [the defendant]"); *Thompson v. State*, 462 S2d 777, 779-780 (Ala. Cr. App. 1984); *State v. Benson*, 2002 WL 31813024 (Ohio App. 2002) (unreported decision).

4. Appellant next complains it was a violation of OCGA § 24-9-65[2] to permit a non-expert witness to give an opinion regarding the identity of a person shown on the videotape and on still photos derived from the videotape. One of the persons who attended the professional football game with appellant the day after the three men were killed in the Atlanta hotel testified he had known appellant for twenty-two years and described their relationship as "pretty good friends." He saw the videotape on television newscasts and the movement, body language, and mannerisms displayed by the person on the videotape led him to believe the person on the videotape was appellant. The witness testified that appellant's appearance at the time of trial (October-November 2002) differed from his appearance at the time the videotape was made and appellant and the witness attended the football game (October 17-18, 1998), with appellant having gained approximately fifty pounds in the ensuing four-year period. The witness looked at photos derived from the video and testified the profile, hand gestures, posture, and demeanor depicted in the photos were what brought appellant to mind.

While lay persons are generally prohibited from expressing an opinion as to the existence of a fact, a lay person may relate such an opinion "so long as the opinion is based upon the [witness's] own observations, and so long as the witness cannot adequately relate those observations to the jury without also relating a personal opinion formed through such observations." *Johnson v. Knebel*, 267 Ga. 853, 856 (2) (485 SE2d 451) (1997). When a witness to or a victim of a criminal act is unable to positively identify the defendant as the perpetrator, the witness or victim is permitted to state an opinion

---

[2] OCGA § 24-9-65 provides: "Where the question under examination, and to be decided by the jury, shall be one of opinion, any witness may swear to his opinion or belief, giving his reasons therefor. If the issue shall be as to the existence of a fact, the opinions of witnesses shall be generally inadmissible."

that the defendant is the perpetrator, as long as the witness or victim states facts within the person's knowledge sufficient to support the opinion. *Garrett v. State*, 141 Ga. App. 584 (3) (234 SE2d 161) (1977) (victim who did not see assailant's face was permitted to give her opinion that, based on his build and profile, defendant was the perpetrator); *Randall v. State*, 73 Ga. App. 354, 367 (2) (36 SE2d 450) (1945) (noting this Court's holding in *Kent v. State*, 94 Ga. 703 (19 SE 885) (1894), that the "opinion and best judgment" of a witness unable to positively identify the defendant "were relevant"). See also *Sanford v. State*, 225 Ga. App. 898 (2) (485 SE2d 233) (1997). A person not qualified as an expert and who was not the victim of or witness to a crime but who has viewed a surveillance videotape of the commission of the crime, has been permitted to give an opinion of the identity of persons depicted on the videotape

> if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photo-graph than is the jury. This criterion is fulfilled where the witness is familiar with the defendant's appearance around the time the surveillance photograph was taken and the defendant's appearance has changed prior to trial. [Cits.]

*Harper v. State*, 213 Ga. App. 444, 448 (5) (445 SE2d 303) (1994).[3] Such witnesses, while not eyewitnesses to the crime, differ from the jury in that they had personal knowledge of the defendant close to the time of the crime and have personal knowledge that the defendant's appearance has changed. *Roberts v. State*, 257 Ga. App. 251 (2) (570 SE2d 595) (2002) (persons who identified defendant as the perpetra-tor in surveillance videotape based their opinion on their observation of defendant four days after videotape was made and stated that defendant's appearance had changed prior to trial). However, it is improper to allow a witness to testify as to the identity of a person in a video or photograph when such opinion evidence tends only to establish " 'a fact which average jurors could decide thinking for themselves and drawing their own conclusions.' [Cit.]" *Mitchell v. State*, 283 Ga. App. 456, 458-459 (641 SE2d 674) (2007) (improper to admit deputy sheriff's identification of defendant as person depicted on photos from videotape where there was no evidence the defen-dant's appearance had changed by the time of trial or that the defendant exhibited some characteristic that made the deputy sheriff more likely than the jury to identify him correctly); *Carter v. State*,

---

[3] In reaching its conclusion, the Court of Appeals relied on federal appellate court decisions construing Rule 701 of the Federal Rules of Evidence.

266 Ga. App. 691 (2) (598 SE2d 76) (2004) (proper to prevent defendant's mother and aunt from giving their opinion that defendant was not one of the perpetrators depicted in the video of the crime as it was not beyond the ken of the average juror to decide whether the person in the video was the defendant).

In the case at bar, the quality of the videotape and the still photos were such that it was not within the ability of average jurors to decide by "thinking for themselves and drawing their own conclusions." *Mitchell v. State*, supra, 283 Ga. App. at 459. Appellant's close friend of twenty-two years testified from his personal observations that appellant's appearance had changed in the four years between the videotape recording and the trial, and the witness's identification opinion testimony was based on his personal observations of appellant over the years, observations that permitted him to see the videotaped person's profile, hand gestures, posture, and demeanor and believe appellant was the person depicted, yet were personal observations he could not adequately relate to the jury without also relating a personal opinion formed through such observations. *Johnson v. Knebel*, supra, 267 Ga. at 856. Under these circumstances, there was no error in the trial court's admission of the identification opinion testimony.

5. Because the State sought imposition of the death penalty in this case, appellant's trial entered into its "penalty phase" the day following the jury's return of its guilty verdicts. On the first day of the sentencing trial, defense counsel reported that appellant, who was in the custody of the sheriff, was in a holding cell in the courthouse and was suffering from high blood pressure and its side effects of blurred vision and severe headaches. The medical director for the county jail testified appellant suffered from high blood pressure which previously had been controlled with the appropriate dosage of medication. After examining appellant in the holding cell and treating him with blood pressure medication and Tylenol 3 for the headaches, the physician concluded appellant was fit to proceed with trial. The trial court denied defense counsel's motion for a continuance of the trial. When informed of the trial court's decision, appellant decided to remain in the holding cell. At the resumption of the trial, the trial court informed the jury appellant was not feeling well and had elected not to attend the proceedings, and instructed the jury to draw no inferences from his absence.

Embodied in the constitutional right to the courts under Art. I, Sec. I, Par. XII of the Georgia Constitution of 1983 is the right of the criminal defendant to be present at all proceedings had against him at the trial of his case. [Cit.] The right to be present attaches "at any stage of a criminal

proceeding that is critical to its outcome if [the defendant's] presence would contribute to the fairness of the procedure." [Cit.] This Court has determined that "[a] critical stage in a criminal prosecution is one in which a defendant's rights may be lost, defenses waived, privileges claimed or waived, or one in which the outcome of the case is substantially affected in some other way." [Cit.]

*Huff v. State*, 274 Ga. 110, 111 (2) (549 SE2d 370) (2001). It goes without saying that the presentation of testimony to the jury is a critical stage in a criminal prosecution. A defendant may waive his right to be present at trial (*Lonchar v. State*, 258 Ga. 447 (2) (a) (369 SE2d 749) (1988)), and his voluntary absence from the trial constitutes such a waiver. *Coley v. State*, 272 Ga. App. 446 (3) (612 SE2d 608) (2005). Appellant's constitutional rights were not violated by the commencement of the sentencing phase in his absence since appellant waived his right to be present by his voluntary absence from the proceedings when he chose not to attend the first day of the sentencing phase of his trial after a medical expert examined him, treated him, and pronounced him fit to proceed.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 17, 2008.

*Thomas M. West, Robert H. Citronberg,* for appellant.
*Paul L. Howard, Jr., District Attorney, Peggy R. Katz, Bettieanne C. Hart, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General,* for appellee.