### A09A1638. WADLINGTON v. THE STATE.
(692 SE2d 28)

SMITH, Presiding Judge.

Andrew Wadlington appeals from his armed robbery conviction, contending he received ineffective assistance of counsel. Because the trial court erred by denying Wadlington's motion for new trial based upon this claim, we must reverse.

1. Wadlington contends that his trial counsel erred by failing to object when a detective testified that he knew Wadlington was the person in a surveillance tape because the jury could look at Wadlington and the tape and draw their own conclusion. In *Grimes v. State*, 291 Ga. App. 585 (662 SE2d 346) (2008), we held that it "remains improper to allow a witness to testify as to the identity of a person in a video or photograph when such opinion evidence tends only to establish a fact which average jurors could decide thinking for themselves and drawing their own conclusions." Id at 590 (2). We therefore concluded that trial counsel's performance was deficient when he failed to object to a detective's testimony that "when I came into contact with [the defendant], having already seen the FBI bulletin, it was apparent that this was the individual from those cases." Id. at 590 (2). Because the defendant's defense at trial was misidentification and the other evidence of identification was "not strong," we concluded that there was a reasonable probability that the outcome might have been different. Id. at 592-594.

The record before us here presents a similar situation. A convenience store employee testified that he was robbed at gunpoint in the early morning hours of September 12, 2006. While the employee got down on the floor as instructed by a man holding the gun, he saw a second man, a "big guy, another Afro-American; and he had a — he was all dressed in blue and he had a, like, a baseball cap on his head, too. And I just went down. . . ." The employee described the shirt as "light blue" in color and it was untucked. The hat was also blue. The employee could not see anything while he was on the floor, but heard them "moving around looking for something." Someone took his wallet out of his back pocket and then he heard the men leave. The entire robbery "was quick. It was two or three minutes." The employee testified that he observed the man with the blue baseball cap "just for a moment," meaning seconds. He described this man to the police as being six feet tall, 250 pounds, black with a dark complexion, and with no beard or mustache.

560

When a detective arrived at the store after the robbery, he obtained surveillance camera footage depicting the large man wearing the blue hat and blue shirt. He described the footage as "the worst film that you can get to receive because it's real hard and grainy-looking. . . ." The detective testified that he created three photographs from the video surveillance tape. The detective testified that one of the photographs showed that the man wearing the blue hat had "a mustache and the goatee, or Fu Manchu." The officer also testified that he could discern the letter on the baseball cap.

The detective showed the still photographs to Officer Holmes. While on routine patrol two days after the robbery, Officer Holmes noticed a suspicious car parked behind a restaurant that was out of business. This business was located about five miles away from the robbery location. He noticed a red, white and blue baseball cap sitting on the front passenger seat with the letter C on the front." He saw a heavyset male, Wadlington, in the back seat with a beard and mustache. He called the detective because the man "appeared to be the, to fit the description of the suspects in the armed robbery."

The detective testified that when he arrived on the scene and approached Wadlington, "I could tell it was him. I just knew it was him." He also testified that he "looked at that videotape so much that when I saw his facial and body style and everything about him, it wasn't just the hat that got me to say that was him." He also testified that he "was positive it was the Defendant and that's the reason I arrested him" and that he "would never arrest nobody unless I'm absolutely, 100 percent sure." The detective did not find anything in the car that linked Wadlington to the robbery other than a blue shirt and baseball cap.

Two days after the robbery, the detective showed the employee a lineup with six photographs in it. The individuals depicted in photographs one and six were heavy, African-American men who looked very similar to one another; Wadlington was depicted in photograph number six. The employee initially "picked out number six and then he said, 'Well, it could be number one, too.' " The employee then wrote on a police department form, "I picked out to my memory 1 or 6 that looks like one individuals he robbed the store but I incline to believe that it's closer to no. 6." At trial, the employee testified with regard to the lineup that "[t]here's one who appears to be, but it's not. . . . It looked like him, but it was not because number six is the one that I seen." He also identified the "Afro-American wearing white and sitting next to, I think, the defense attorney" as the man who came into the store wearing the blue shirt and blue baseball cap.

During cross-examination, the employee acknowledged that he was "indecisive" about his identification two days after the robbery,

but was sure of his identification at trial one year later. The witness also admitted that he was aware that "the Mets, the Dodgers, the Cubs, the Indians, the Angels, the Red Sox, and Royals all have hats that are blue."

During cross-examination, the detective acknowledged that the employee's written description of the robber's physical characteristics "missed it" and did not match Wadlington. He further explained that "[s]ometimes victims do not put exactly what they see and they do make mistakes because they're upset and nervous during the time that we're asking these questions."

In the motion for new trial hearing, defense counsel testified that he "didn't think [the officer's testimony] was objectionable. I could be incorrect in that. . . . And, frankly, I'm still not sure whether I should have or not." He did not view it as "inadmissible testimony." Instead, "it was not a whole lot different from an in-court identification, as a just on-the-scene identification. And I didn't think it was objectionable." During cross-examination, defense counsel testified that he "possibly" made a decision not to object "because it was a very quick time frame, series of frames and, frankly, I just kind of wished it was said, gone and they wouldn't dwell on it, from what I can remember."

At the conclusion of the motion for new trial hearing, the trial judge concluded that *Grimes* did not control because the officer's testimony was admissible to explain why Wadlington was arrested and placed on trial. The trial judge also ruled that he did "not believe that the ineffective assistance of counsel but for, if there was ineffective assistance of counsel, that there would have been a different outcome in the case because there is substantially more evidence" than in *Grimes*. The trial court did not expressly find that defense counsel made a strategic decision not to object.

We disagree with the trial court's conclusions for several reasons. First, "[o]nly in rare instances will the 'conduct' of an investigating officer need to be 'explained.' . . . The mere circumstance of an officer's initiation and continuation of an investigation, without more, is not a relevant inquiry." (Citations and punctuation omitted.) *White v. State*, 273 Ga. 787, 788 (1) (546 SE2d 514) (2001). Second, it is well-established that a witness cannot identify a person depicted in a video as being the defendant if it is within the ability of the jurors to decide this issue for themselves. *Grimes*, supra, 291 Ga. App. at 590 (2); *Mitchell v. State*, 283 Ga. App. 456, 458-459 (641 SE2d 674) (2007). Defense counsel's failure to object to the officer's repeated testimony on this issue constituted deficient performance.[1]

---

[1] To the extent defense counsel's failure to object could be characterized as strategic, we

Considering all of the evidence submitted by the State in this case, we must also conclude that there is a reasonable probability that the outcome might have been different but for defense counsel's deficient performance.[2] Although the surveillance tape was grainy and of poor quality, the officer testified that he was positive and 100 percent sure that Wadlington was the man in the tape. The eyewitness saw the robber for mere seconds, gave an inaccurate physical description of the robber immediately after the robbery, had difficulty identifying the robber in the lineup two days after the robbery, and yet was certain of his identification at trial over one year later. The State presented no physical evidence linking Wadlington to the armed robbery other than a common blue shirt and blue baseball cap. Based on this less than overwhelming identification evidence, as well as the fact that Wadlington's defense was that he had been misidentified, a reasonable probability exists that the outcome might have been different if counsel had objected to the detective's repeated assertions that he was positive that Wadlington was the man in the surveillance tape.

2. Wadlington's remaining claim of ineffective assistance of counsel is rendered moot by our holding in Division 1.

*Judgment reversed. Phipps and Bernes, JJ., concur.*

DECIDED MARCH 2, 2010.

*Stephen R. Scarborough*, for appellant.

*Tommy K. Floyd, District Attorney, Thomas R. McBerry, Assistant District Attorney*, for appellee.

---

conclude that such a strategy would not have been a reasonable one that a competent attorney would have made under the same circumstances. See generally *Benham v. State*, 277 Ga. 516, 518 (591 SE2d 824) (2004) ("tactics and strategy provide no talismanic protection against an ineffective assistance of counsel claim").

[2] We note that the trial court's statement at the end of the motion for new trial hearing indicates that it may have applied an incorrect analysis of prejudice. See *Miller v. State*, 285 Ga. 285, 286-287 (676 SE2d 173) (2009) (showing of prejudice requires reasonable probability that outcome would have been different, not more rigorous showing that but for counsel's error, the outcome of the case would have been different).