**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**May 30, 2012**

# In the Court of Appeals of Georgia

A12A0795. JACKSON v. THE STATE.

BARNES, Presiding Judge.

Bernard Jackson appeals his jury convictions for armed robbery and possession of a firearm during the commission of a crime, arguing that his trial counsel was ineffective. For the reasons that follow, we affirm.

The appellate court reviews the evidence in the light most favorable to the verdict, giving deference to the jury's determination on the proper weight and credibility to be given the evidence. It is for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.

(Citations and punctuation omitted.) *Farris v. State*, 290 Ga. 323, 324 (1) (720 SE2d 604) (2012).

Viewed in that light, the evidence at trial established that Jackson and his co-defendant entered a convenience store one evening with t-shirts covering their faces. Jackson wore a white sock over his right arm. The co-defendant pointed a gun at the cashier, who gave him about $300 from the cash register and four or five packs of Newport cigarettes, and the men left. Meanwhile, Jackson's cousin saw the men, who were brothers, committing the armed robbery as she drove through the parking lot. She recognized them despite the shirts on their heads and called her sister, who reported to the police that an armed robbery was in progress at the store.

After the men left, the cashier also called the police to report the robbery, and described both men as African American and in their late teens or early twenties. One man was wearing a black t-shirt and blue shorts. While the responding officers were interviewing her at the store, Jackson's cousin called to check on the cashier. The cousin eventually spoke with the officers, and in response to their request, she came to the sheriff's office and made a statement identifying Jackson and his co-defendant as the armed robbers.

Officers went to Jackson's house to execute an outstanding arrest warrant for a probation violation and found him hiding under a bed, wearing a t-shirt and blue shorts. He had a burn mark and a tattoo with his nickname "Hard Nard" on his right

forearm. The numbers on the bottom of an unopened pack of Newport cigarettes in Jackson's house were in sequence with the numbers on cigarette packs that were still in the convenience store. Jackson's co-defendant was also in the house, and a pair of black tennis shoes and plaid shorts on the floor in his room looked like those worn by the gunman in a video of the robbery.

The cashier later identified Jackson from a photographic lineup. The officer who conducted the lineup explained that the cashier was "pretty sure that [he] was the one without the gun, that it just looked just like him and [she] recognized him from being in the store once or twice." The cashier also identified Jackson in court as one of the two robbers. Another witness testified that he overheard Jackson and his co-defendant bragging about a robbery they just committed and saw them handing out cigarettes to everyone. That witness was later arrested in an unrelated case and placed in a jail cell next to Jackson, who talked to him about the robbery. The co-defendant's live-in girlfriend identified both men from the video, explaining that she recognized how Jackson walked and knew all the clothing both men owned and shared.

The jury convicted Jackson of armed robbery and possession of a firearm during the commission of a crime, and he pled guilty to possession of a firearm by a convicted felon. The trial court sentenced him to life for the armed robbery, four years

on the firearm possession by a convicted felon charge to be served concurrently, and five years on the firearm possession during the crime charge to be served consecutively.

Jackson argues on appeal that his trial counsel was ineffective for failing to object to the testimony of a State's witness who identified him from the store video, for failing to adequately investigate and present a defense, and for failing to file a motion to sever his trial from his co-defendant's.

> [T]o succeed on his claim of ineffective assistance, [Jackson] must satisfy both prongs of *Strickland v. Washington*, 466 U.S. 668 (104 SC 2052, 80 LE2d 674) (1984)[;] that is, he must prove that his attorney's performance was deficient and that there is a reasonable probability that the result of his trial would have been different but for such deficiency; in this Court's review of the trial court's decision regarding the alleged ineffectiveness, this Court is to accept the trial court's factual findings and credibility determinations unless they are clearly erroneous, but it is to independently apply the legal principles to the facts.

(Citation omitted.) *Nations v. State*, 290 Ga. 39, 42 (4) (717 SE2d 634) (2011).

4

1. Jackson first argues that his trial counsel was deficient in failing to object when his co-defendant's girlfriend testified that she recognized the men from the video. His trial counsel testified at the motion for new trial hearing that he did not object because he thought the evidence was admissible and he made the strategic decision not to make a frivolous objection.

> A person not qualified as an expert and who was not the victim of or witness to a crime[,] but who has viewed a surveillance videotape of the commission of the crime, has been permitted to give an opinion of the identity of persons depicted on the videotape if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the [image] than is the jury.

(Citation and punctuation omitted.) *Dawson v. State*, 283 Ga. 315, 320 (4) (658 SE2d 755) (2008). For example, a witness may be more likely to identify the defendant correctly because he "had personal knowledge of the defendant close to the time of the crime and ha[s] personal knowledge that the defendant's appearance has changed." Id.; *Roberts v. State*, 257 Ga. App. 251, 252 (2) (570 SE2d 595) (2002) (officers who saw defendant four days after crime were more likely than jury to identify him correctly from a surveillance video because his appearance had changed since then); *Harper v. State*, 213 Ga. App. 444, 448 (5) (445 SE2d 303) (1994)

(investigators were authorized to identify defendant from video because "they were able to observe the defendant at the time of the robbery before his appearance had changed"). In *Dawson*, 283 Ga. at 320-321, the identification testimony was admissible because the video was bad quality and the defendant had gained 50 pounds since the surveillance video.

Here, Jackson's appearance on the surveillance video with most of his face covered was drastically different from his appearance in the courtroom with his face uncovered, and the witness had lived with Jackson's co-defendant, who was his brother, in the same house as Jackson. Her familiarity with Jackson and his clothes was a sufficient basis to conclude that she was more likely to correctly identify him from the video than the jury. See *Bradford v. State*, 274 Ga. App. 659, 661 (3) (618 SE2d 709) (2005). Therefore, the witnesses' testimony identifying him from the video was admissible. As failure to object to admissible evidence is not ineffective assistance, *Fults v. State*, 274 Ga. 82, 87 (7) (548 SE2d 315) (2001), this enumeration lacks merit.

2. Jackson contends that his trial counsel's assistance was ineffective because he failed to adequately investigate and present a defense, specifically that he did no independent pre-trial investigation, and did not interview any of the law enforcement

6

officers involved in the case, the robbery victim, or Jackson's cousin who identified him from the parking lot. Further, trial counsel did not present an alibi defense, and two witnesses testified at the motion for new trial hearing that they had seen Jackson on the night of the crime at a different location, at a time when he could not have committed the robbery.

Trial counsel testified at the new trial hearing that he gave Jackson a copy of the State's discovery materials and met with him in the months before trial to go over the discovery, view the surveillance tape, discuss possible witnesses and defenses, and make decisions about various trial matters. He reviewed all of the witness statements and was not surprised by any of their testimony. As to the two witnesses who testified at the new trial hearing that Jackson was elsewhere when the robbery occurred, Jackson concedes that their testimony conflicts with his statement to a GBI agent that he had been home asleep when the robbery occurred and that no one could verify that. While Jackson argues that witnesses almost always give differing accounts of events in criminal trials and calling witnesses who contradict each other may be good strategy under certain circumstances, whether or not to call those witnesses is clearly a strategic decision. And in this case, trial counsel testified that he discussed with Jackson his statement to the agent, and would have remembered if

Jackson told him he had alibi witnesses who would testify to the contrary, because those situations can raise all kinds of problems for the witnesses and an ethical dilemma for the lawyer. Further, the trial court found that the two witnesses who testified at the hearing were not credible. Finally, because the evidence against Jackson was substantial – the victim had identified him in the photo line-up as one of the robbers, his cousin had identified him as one of the robbers, and a witness overheard Jackson bragging about the crime – counsel was "feverishly negotiating" with the State before trial to obtain a favorable plea bargain for Jackson. Jackson was facing a possible sentence of ten years to life in prison, and if he was sentenced to life he would not be eligible for parole until he had served 30 years. Trial counsel obtained an offer to reduce the armed robbery charge to robbery, with a sentence of eight years in jail plus additional probation time in exchange for his guilty plea.

"A trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous." (Citation and punctuation omitted.) *Lee v. State*, 205 Ga. App. 139, 141 (421 SE2d 301) (1992). The trial court found that the alibi witnesses who testified at the motion for new trial hearing were not credible and that Jackson failed to show his trial counsel was deficient, and those findings were not clearly erroneous.

3. Finally, Jackson asserts his trial counsel was deficient for failing to file a motion to sever his case from his co-defendant's, who was facing additional charges of escape, aggravated assault on a correctional officer, and two counts of obstruction of an officer, wholly unrelated to the armed robbery charges against both men. Given that these other charges involved separate witnesses and involved events that occurred more than six months after the robbery, Jackson argues, filing a motion to sever would have been "a reasonable, certainly meritorious strategy to pursue."

Trial counsel testified that his decision not to file a motion to sever the trials was both strategic and practical, because it would not have been successful. He had spoken with the co-defendant's lawyer and knew that neither defendant was going to take the stand and testify. The co-defendant did not make a statement, and Jackson's statement did not implicate the co-defendant, so their defenses were not antagonistic. The case was not so factually or legally complicated that trying the men together might confuse the jury, and trial counsel thought that the evidence about the co-defendant's actions related to the other charges would not prejudice Jackson. Because trial counsel did not think a motion to sever would have been granted, he did not file one, choosing instead to concentrate on the defense of misidentification.

9

"The failure to file a motion to sever does not require a finding of ineffective assistance [when] the decision whether to seek severance is a matter of trial tactics or strategy, and a decision amounting to reasonable trial strategy does not constitute deficient performance." (Citation omitted.) *Jackson v. State*, 281 Ga. 705, 707 (6) (642 SE2d 656) (2007). Nor does a failure to file such a motion constitute ineffective assistance if the motion would have been futile. "A successful motion for severance requires a showing that a joint trial will prejudice the accused. Because [Jackson] could not show that the joint trial caused him any harm, defense counsel was not ineffective for failing to move for severance." *Glenn v. State*, 279 Ga. 277, 279 (2) (c) (612 SE2d 478) (2005).

*Judgment affirmed. Adams, J. concurs. McFadden, J., concurs fully and specially.*

A12A0795. JACKSON v. THE STATE.

MCFADDEN, Judge.

I concur fully in the majority opinion. I write separately to elaborate on the standards of review applicable to claims of ineffective assistance of counsel. In Division 2, the majority correctly applies the clearly erroneous standard, which in Georgia is equivalent to the any-evidence standard. But that standard is applicable only to findings of fact. To the extent a ruling on a claim of ineffective assistance entails a ruling on an issue of law or an exercise of discretion, different standards apply. See *Suggs v. State*, 272 Ga. 85, 87-88 (4) (526 SE2d 347) (2000). See generally *Reed v. State*, __ Ga. __ (3) (__ SE2d __) (Case No. S12A0443, decided April 24, 2012).