**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**October 9, 2012**

# In the Court of Appeals of Georgia

A12A0881. OWENS v. THE STATE.

DILLARD, Judge.

Following a trial by jury, Charles Earl Owens was convicted on two counts of robbery by sudden snatching. On appeal, Owens contends that (1) the evidence was insufficient to sustain his convictions, (2) trial counsel rendered ineffective assistance for a number of reasons, and (3) the trial court erred in failing to determine whether Owens and his trial counsel had a conflict of interest. Because Owens's trial counsel rendered ineffective assistance of counsel, we reverse his convictions.

Viewed in the light most favorable to the verdict,[1] the record reflects that on February 6, 2009, at approximately 2:20 a.m., a man entered a Lilburn Waffle House that was otherwise deserted, except for the presence of two employees. Upon entering

---

[1] *See, e.g.*, *Smith v. State*, 235 Ga. App. 223, 224 (510 SE2d 295) (1998).

the establishment, the man checked the restroom for occupants and initially made as if to order at the counter, but then he demanded that the server open the register. When the server hesitated, the man again commanded her to "open the damn register," and after she complied, he grabbed the money from within, walked out of the restaurant, and ran across the street. The server and grill operator described the perpetrator as an African American male who wore sunglasses, a black-and-white jacket, and loose pajama-style or chef-style pants. Neither could identify the robber from a photographic lineup, and although police dusted the premises for fingerprints, they could not pinpoint a suspect.

Three days later, on February 9, 2009, at approximately 6:00 a.m., a man entered a Gwinnett County convenience store and asked the operator whether he could use the restroom. When the operator responded that the restroom was out of order, the man uttered profanities and made as if to leave; however, he reentered the store after walking outside and covering his face with a pair of pantyhose. The man kept one hand in his pocket, jumped on the counter top, demanded that the operator open the register and give him money, and advised the operator that he had a gun and would shoot if his demands were not met. Once the register opened, the man grabbed the money and left the premises. The operator described the perpetrator as wearing

a jacket and checkered pants. A responding officer discovered a black jacket in the roadway near the crime scene, and the jacket appeared to have been recently discarded. Police also lifted a gel print of the perpetrator's shoe from the counter top, and although they dusted the premises for fingerprints, they again could not pinpoint a suspect.

With no leads in the Waffle House incident, law enforcement decided to air surveillance video on the local news in the hope that a viewer could identify a suspect. After the video aired on February 18, a law-enforcement officer from Cobb County called and identified Owens. Thereafter, law enforcement conducted research on Owens, contacted a probation officer who was familiar with him, and sent her still shots from the Waffle House surveillance video, from which she too opined that Owens was the perpetrator. Law enforcement eventually connected the two robberies on the belief that, due to certain similarities, they were committed by the same person.

Warrants were then issued for Owens's arrest, which were served at a residence he shared with other individuals. A search warrant was executed after Owens's arrest, and police impounded a vehicle to which Owens had access but which was registered to someone else. Inside the vehicle, officers discovered a firearm. An officer also seized the shoes Owens wore after recognizing the tread pattern from the

investigation. A subsequent comparison of the shoes to the print lifted at the crime scene revealed similar wear, pattern, and size, but the expert forensic examiner could not positively identify Owens's shoes as an exact match due to a lack of more detailed features (*e.g.*, cuts, scratches, and nicks within the pattern).

Owens was thereafter indicted on one count of robbery by sudden snatching[2] related to the incident at the Waffle House, and one count of armed robbery[3] related to the incident at the convenience store. On both counts, he was convicted by the jury of robbery by sudden snatching.[4] This appeal follows.

1. Owens contends that his trial counsel rendered ineffective assistance of counsel by failing to object to improper opinion testimony as to the identity of the perpetrator. We agree.

In general, when a defendant claims that he received ineffective assistance of counsel, he has the burden of establishing that "(1) his attorney's representation in specified instances fell below an objective standard of reasonableness, and (2) there

---

[2] OCGA § 16-8-40 (a) (3).

[3] OCGA § 16-8-41 (a).

[4] The jury convicted Owens of the lesser-included offense of robbery by sudden snatching on the armed-robbery count.

is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[5] And when a trial court determines that a defendant was not denied effective assistance of counsel, that decision "will be affirmed on appeal unless that determination is clearly erroneous."[6]

In the case *sub judice*, Owens takes issue with his trial counsel's failure to, *inter alia*, object to the testimony by the Cobb County law-enforcement officer and the probation officer, who opined that Owens was the perpetrator in the surveillance video from the Waffle House incident. The first witness testified that she had known Owens for about five years and that she recognized him in the video "by his mannerisms, the way he walked." The second witness testified that she had "no question" that Owens was the individual in the surveillance footage. And when questioned as to why, she responded that she had seen Owens about two weeks prior and recognized his face, although she denied that there was anything distinctive or characteristic about his face. She also did not recall the individual in the surveillance footage wearing anything that obscured his hair, head, face, or neck.

---

[5] *Grimes v. State*, 291 Ga. App. 585, 589 (2) (662 SE2d 346) (2008) (punctuation omitted).

[6] *Id.*

5

In a motion for new trial, Owens argued that his trial counsel was ineffective for failing to object to the above testimony because it was inadmissible opinion evidence concerning the identity of the perpetrator in the Waffle House surveillance tape. At the hearing on the motion, his former trial counsel testified that she had no strategic or tactical reason for not objecting. In ruling against Owens, the trial court determined that the testimony was admissible and relevant, and that counsel was not ineffective for failing to object. Specifically, the trial court found that the two witnesses "had independent prior contact with [Owens] and knew him from this prior interaction," and that the witnesses "had knowledge outside of the ken of the jurors and properly testified why they believed they recognized [Owens] in the surveillance videos [sic]." At least as to the second witness, the probation officer, the trial court's ruling was erroneous.

It is well established in our case law that it is improper to allow a witness to "testify as to the identity of a person in a video or photograph when such opinion evidence tends only to establish a fact which average jurors could decide thinking for

themselves and drawing their own conclusions."[7] Indeed, such identification

testimony

> should be admitted for the jury's consideration *only* if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the [video or] photograph than is the jury, as when the witness is familiar with the defendant's appearance around the time a surveillance [video or] photograph was taken and the defendant's appearance has changed prior to trial, or when the witness knows about some other distinctive but presently inaccessible characteristic of the defendant's appearance.[8]

Thus, a witness's familiarity with the defendant, in and of itself, "does not make his

or her identification testimony based on a video or photograph admissible."[9]

---

[7] *Dawson v. State*, 283 Ga. 315, 320 (4) (658 SE2d 755) (2008) (punctuation omitted); *accord Grimes*, 291 Ga. App. at 590 (2).

[8] *Grimes*, 291 Ga. App. at 590-91 (2) (punctuation omitted); *see also Dawson*, 283 Ga. at 320 (4) ("A person not qualified as an expert and who was not the victim of or witness to a crime but who has viewed a surveillance videotape of the commission of the crime, has been permitted to give an opinion of the identity of persons depicted on the videotape if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury. This criterion is fulfilled [when] the witness is familiar with the defendant's appearance around the time the surveillance photograph was taken and the defendant's appearance has changed prior to trial." (punctuation omitted)).

[9] *Grimes*, 291 Ga. App. at 591 (2).

And here, there was no evidence that the perpetrator's face was obscured by a mask or that Owens's appearance had changed prior to trial. Although the State argues that the perpetrator in the surveillance video wore sunglasses and a hat, we have rejected a similar argument in the past,[10] and the probation officer did not offer any basis for her identification of Owens aside from general familiarity.[11] On the other hand, the Cobb County law-enforcement officer's identification was based on an observation of a "distinctive but presently inaccessible characteristic of the defendant's appearance," *i.e.*, his mannerisms and walk. Accordingly, while an

---

[10] *See id.* (rejecting State's argument that identification testimony was admissible when perpetrator's head was covered and photographs were grainy). *Compare Roberts v. State*, 257 Ga. App. 251, 251 (2) (570 SE2d 595) (2002) (permitting identification testimony when officers took defendant's statement four days after robbery, perpetrator in video wore a mask, officers testified that defendant's physical appearance had changed since robbery, and defendant admitted that his hair had changed since robbery). Our review of the video shows that although the perpetrator appears to be wearing sunglasses, his face was not obscured by a hat. His head instead appears to be covered by a tight-fitting do-rag.

[11] *Compare Dawson*, 283 Ga. at 319 (4) (permitting identification testimony when witness identified defendant by movement, body language, and mannerisms, and defendant gained approximately 50 pounds before trial); *Jackson v. State*, No. A12A0795, 2012 WL 1940307, at *1, 3 (Ga. App. May 30, 2012) (permitting identification testimony when most of perpetrator's face was obscured in surveillance video but witness testified that she identified the defendant by her familiarity with his walk and clothing).

8

objection to that testimony would have been unfounded,[12] an objection to the probation officer's testimony would have had merit.[13]

Indeed, this inadmissible testimony went to the heart of Owens's defense of misidentification and, thus, because counsel's failure to object was due to a "misapprehension of the law rather than any unwise choices of trial tactics and strategy, we conclude that [Owens's] trial counsel's performance fell below an objective standard of reasonableness."[14] Having so determined, we must now consider "whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[15]

Although there was other evidence tending to identify Owens as the perpetrator, it was limited to the brief, aforementioned testimony of the Cobb County

---

[12] *See Bradford v. State*, 274 Ga. App. 659, 661 (3) (618 SE2d 709) (2005) (permitting identification when witnesses identified masked perpetrator based on familiarity with defendant's "quirky body movements"); *see also Dawson*, 283 Ga. at 319 (4); *Jackson*, 2012 WL 1940307, at *1, 3.

[13] *See Grimes*, 291 Ga. App. at 392 (2); *see also Mitchell v. State*, 283 Ga. App. 456, 459 (641 SE2d 674) (2007) (identification was improper when testimony was based on no more than officer's previous acquaintance with defendant).

[14] *Grimes*, 291 Ga. App. at 392 (2).

[15] *Id.* (punctuation omitted).

law-enforcement officer; a recording of a jail-house telephone call in which Owens spoke to his roommate and discussed how the roommate had "pulled one" with regard to "bottoms";[16] and the similarities between Owens's shoes and those worn by the perpetrator. But this evidence was countered by the fact that no witness to the crimes could identify Owens; the shoe print could not be definitively linked to Owens; fingerprint evidence could not be linked to Owens; the jacket discovered near the convenience store was not linked to Owens; and the firearm was not definitively linked to Owens or the convenience-store robbery.

Suffice it to say, the determination that the perpetrator depicted in the surveillance videos was in fact Owens was a question for the jury. Owens's trial counsel, however, permitted the jury's decision in that regard to be made contextually with unequivocal, inadmissible testimony that Owens was the person depicted in the surveillance video.[17] Thus, we conclude that if the probation officer's testimony regarding her certainty that Owens was the perpetrator had been excluded, there is a

---

[16] The State argues that the jury could have inferred from this recording that Owens and his roommate were speaking in code, and that the roommate had discarded the distinctive pants worn by the perpetrator during the robberies.

[17] *See Grimes*, 291 Ga. App. at 593 (2).

reasonable probability that Owens would have been acquitted.[18] Owens, therefore, is entitled to a new trial, and this case is remanded for that purpose.[19]

2. Although we reverse on the issue of ineffective assistance of counsel, we disagree with Owens's contention that the evidence was insufficient to sustain convictions for robbery by sudden snatching, and conclude that the State may retry Owens.

A person commits the offense of robbery by sudden snatching when he or she "with intent to commit theft, . . . takes property of another from the person or the

---

[18] *See id.*; *see also Wadlington v. State*, 302 Ga. App. 559, 562 (692 SE2d 28) (2010) ("Based on this less than overwhelming identification evidence, as well as the fact that [the defendant's] defense was that he had been misidentified, a reasonable probability exists that the outcome might have been different if counsel had objected to the detective's repeated assertions that he was positive that [the defendant] was the man in the surveillance tape."). *Compare Bryson v. State*, No. A12A0174, 2012 WL 2478166, at *8 (5) (c) (Ga. App. June 29, 2012) (although trial counsel was ineffective in failing to object to identification testimony, reversal unnecessary when victim identified defendant, officer who chased and apprehended defendant shortly after robbery identified defendant in court, and items from robbery were found in defendant's get-away vehicle); *Ware v. State*, 307 Ga. App. 782, 785 (1) (c) (706 SE2d 143) (2011) (reversal unnecessary when victims identified perpetrator and jury was shown still photographs of the robber's face); *Rogers v. State*, 294 Ga. App. 195, 198-99 (3) (670 SE2d 106) (2008) (trial court erred in admitting identification testimony but the error was harmless when misidentification was not the basis of the defendant's defense).

[19] *Grimes*, 291 Ga. App. at 594 (2).

immediate presence of another . . . [b]y sudden snatching."[20] And here, there was evidence that a perpetrator grabbed money from the open cash registers in the Waffle House and convenience store in the presence of employees.[21] Further, despite Owens's contentions as to identity and our holding in Division 1, *infra*, there was still some evidence—however limited and in conflict—by which a jury could conclude that Owens was the perpetrator, including the law-enforcement officer's testimony as well as the jury's ability to reach that same conclusion after viewing the surveillance videos.

3. Given our holding in Division 1, we need not address Owens's remaining enumerations of error.

*Judgment reversed and case remanded. Ellington, C. J., and Phipps, P. J., concur.*

---

[20] OCGA § 16-8-40 (a) (3).

[21] *See, e.g., Sweet v. State*, 304 Ga. App. 474, 477 (2) (697 SE2d 246) (2010) (sufficient evidence when defendant opened register and grabbed money in employee's presence).